HEFTLER INTERNATIONAL, INC., demandante y apelante, *v.* JUNTA DE PLANIFICACIÓN, y OTROS, demandados y apelados.

*Número:* O-69-66    *Resuelto:* 15 de diciembre de 1970

---

468

*J. M. Calderón García, J. M. Calderón Cerecedo, William J. Riefkohl, Cristóbal Colón y Fráncisco Alonso Rivera,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Américo Serra, Procurador General Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

La acción iniciada por Heftler International, Inc., objeto de la sentencia apelada, constituye un ataque directo, apoyado en preceptos constitucionales, al sistema de clasificacación "Distrito P" (Proyectos Públicos) utilizado por la Junta de Planificación en el campo de la zonificación en Puerto Rico. Para ello la apelante utilizó el recurso de una acción civil que inició ante el Tribunal Superior, Sala de San Juan el 20 de julio de 1967 dirigida contra la Junta de Planificación, el Departamento de Obras Públicas y el Estado Libre Asociado de Puerto Rico. En dicha demanda la de-

mandante alegó ser dueña de una parcela de 5,259 metros cuadrados ubicada al Sur de la Intersección Núm. 131 entre la Urbanización y el Centro Comercial Santa Rosa en Bayamón por haberla adquirido en el año 1963 por el precio de $135,000.00. Para la fecha de la adquisición y desde el 1960 la parcela adquirida por ella había sido clasificada para uso público (Distrito "P") de acuerdo con el Mapa de Zonificación aprobado por la Junta de Planificación para la ciudad de Bayamón. La demandante alegó, además, que a la fecha de radicación de la demanda habían transcurrido siete (7) años durante los cuales la Junta de Planificación ha mantenido la parcela bajo la misma clasificación sin que el Estado haya iniciado procedimiento alguno para adquirir dichos terrenos estando ella privada, a su vez, del "uso, disfrute, goce y desarrollo" de la misma. Termina con la súplica que se ordenara al Estado a expropiarla mediante el pago de $264,950.00 que alegó como compensación por su justo valor, más $46,500.00 por daños y perjuicios, o que, en la alternativa, se ordenara a la Junta de Planificación "liberar" los terrenos, debiéndose pagar, además, $166,450.00 por los daños y perjuicios sufridos.

La parte demandada solicitó la desestimación de la demanda alegando que el tribunal carecía de jurisdicción para entender y conocer este tipo de pleito. El Tribunal Superior accedió a ello. Mediante sentencia del 19 de marzo de 1968 y resolución en torno a una moción de reconsideración radicada por la demandante, el tribunal se declaró sin jurisdicción y desestimó la demanda.

El Tribunal Superior fundamentó su fallo en el hecho de que la demandante no había agotado los remedios que tenía a su alcance en el foro administrativo de acuerdo con la ley, para lograr una reclasificación o uso distinto de la parcela y que, de entender en el pleito, estaría usurpando las funciones administrativas que legítimamente corresponden al

organismo con autoridad, en este caso, la Junta de Planificación.

La demandante apeló ante nos haciendo constar las cuestiones constitucionales en que basa su recurso. En síntesis Heftler alega que la "congelación" de sus terrenos bajo la clasificación "Distrito P" adoptada y mantenida por la Junta durante más de siete años constituye un despojo de su propiedad sin el debido procedimiento de ley, violándosele las garantías constitucionales a que tiene derecho bajo el Art. 2 de la Constitución del Estado Libre Asociado de Puerto Rico y la Quinta Enmienda de la Constitución de los Estados Unidos. Arguye que por ser de naturaleza constitucional su derecho a justa compensación por la propiedad interferida más los daños sufridos no puede serle negado por el hecho de que exista un procedimiento administrativo disponible para liberar la propiedad de la clasificación que la afecta.

■ Aunque simpatizamos en parte con la posición de la apelante, no podemos convenir con el resultado que pretende. La Junta de Planificación se creó con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico fomentando en la mejor forma el bienestar general de sus habitantes y la eficiencia en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas. Ley Núm. 213 de 12 de mayo de 1942, Art. 3, 23 L.P.R.A. sec. 3. Para implementar estos propósitos la Junta adoptó un Reglamento de Zonificación aplicable a las áreas urbanas o para urbanizarse "estableciendo por distritos o zonas el uso y desarrollo de los terrenos y edificios públicos y privados, para tales fines como: agricultura, industria, comercio, transporte, residencia, actividades, cívicas y públicas o semipúblicas, de recreo, incluyendo playas y balnearios;" 23 L.P.R.A. sec. 9. Es ahí donde descansa la autoridad de la Junta para clasificar terrenos

para uso público, Distrito "P", 23 R.&R.P.R. sec. 9–681.(¹) Sería anacrónico, entrados ya en el último tercio de este siglo, poner en duda el derecho y la obligación del Estado, ante las necesidades públicas, de imponer limitaciones al uso y disfrute de la propiedad. El derecho al disfrute de la propiedad privada está reconocido en nuestra Constitución. Pero ésta establece también que este disfrute ha de ceder ante las necesidades de la comunidad. Art. II, Sec. 7. En *E.L.A.* v. *Márquez*, 93 D.P.R. 393, 401 (1966), dijimos:

> "A estas alturas ya es bien conocido que la comunidad, a través de su Gobierno, puede establecer limitaciones al derecho de propiedad en beneficio del bienestar general."

Como ejemplos del ejercicio del poder de intervención del Estado con la propiedad privada mediante expropiación forzosa, véase *E.L.A.* v. *Rosso*, 95 D.P.R. 501 (1967); *M. Mercado* v. *Tribunal Superior*, 85 D.P.R. 370 (1962); *E.L.A.* v. *Sucn. Gautier*, 81 D.P.R. 580 (1959).

El caso de autos es un ejemplo, bastante crudo a nuestro juicio, del ejercicio del poder de reglamentación que tiene el Estado basado en el poder de policía: La clasificación de terrenos en Distrito "P".

Aquí no media compensación de clase alguna. El derecho al disfrute de la propiedad está prácticamente eliminado. De acuerdo con esta clasificación el uso de la propiedad así marcada está restringido a los siguientes (23 R.&R.P.R. sec. 9–401):

(1) Parque público

(2) Espacio público para estacionar automóviles

(3) Institución educativa pública

(4) Proyecto público de viviendas

---

(¹) El Reglamento de Zonificación vigente anteriormente estuvo vigente hasta el 7 de febrero de 1970 fecha en que entró en vigor el nuevo Reglamento. Dicho Reglamento disponía lo mismo que el presente en cuanto a la Reglamentación de los usos permitidos en los Distritos P.

(5) Oficinas gubernamentales

(6) Hospital público

(7) Parque de bombas

(8) Cuartel de policía

(9) Aeropuerto público

(10) Cementerio público

(11) Otros usos públicos

Como se podrá observar el Reglamento lo único que permite en un Distrito "P" es un "uso público". No hay duda de la severidad de estas restricciones, al punto de haber movido a este Tribunal hace más de veinte años a expresarse en *Segarra* v. *Junta de Planificación*, 71 D.P.R. 150, 153 (1950):

"Suponemos, sin resolverlo, que terrenos que han sido reservados para uso público, tienen que ser adquiridos por el gobierno, por compra o expropiación, dentro de un término razonable."

Nueve años más tarde, en el 1959, en el informe que rindió el Comité del Gobernador para el estudio de los Derechos Civiles en Puerto Rico se sostuvo que "[la] Junta viola derechos constitucionales en la clasificación de distritos para fines públicos. El método de marcar un solar con 'P' (público) significa que al propietario le son seriamente afectados sus derechos de propiedad sobre el terreno. Esto equivale a una expropiación forzosa sin justa compensación o debido procedimiento." Véase, además, *Inmobiliaria Borinquen, Inc.* v. *Garcia Santiago*, 295 F.Supp. 203 (1969). En opinión del Hon. Juez Hiram R. Cancio del Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico, aducía hechos constitutivos de una causa de acción la demandada—basada en la Ley Federal de Derechos Civiles, 42 USCA § 1983—de un terrateniente que alegaba que la actuación de funcionarios del Gobierno de Puerto Rico consistente en indicarle que "reservara" dos parcelas para su futura adquisición por el gobierno sin que se tomara acción

alguna durante más de tres años y que ello constituía una privación de su propiedad y de sus derechos constitucionales y civiles.

La demandante adquirió la propiedad en el año 1963 cuando ya estaba clasificada "P". En el 1965 inquirió de la Junta de Planificación si las .condiciones que motivaron la clasificación "P" seguían siendo válidas y sometió una consulta sobre un proyecto para construcción de edificaciones que serían dedicadas a facilidades comerciales y recreativas y para oficinas profesionales. En el 1966, ocho meses después, la Junta le informó que en una reunión se había determinado que la clasificación y "congelación" de la propiedad continuaría para uso público y que correspondía al Departamento de Obras Públicas proceder a su adquisición.

La cuestión se reduce a determinar si dentro de las circunstancias de este caso específico podía o no el Tribunal Superior entender en una acción iniciada por el propietario contra el Gobierno con el fin de lograr la "descongelación" o en la alternativa, la expropiación mediante justa compensación de unos terrenos clasificados "P". Esta es la acción que se conoce como "Expropiación Forzosa Inversa" (*"Inverse Condemnation"*). Se ha dicho que esta acción tiene un nombre nuevo para un remedio viejo—el derecho del propietario a protección por la incautación de su propiedad sin compensación. *City of Atlanta* v. *Donald,* 141 S.E.2d 560, febrero, 1965.

El Art. II, Sec. 7 de la Carta de Derechos de la Constitución de Puerto Rico consagra el derecho fundamental del ser humano al disfrute de la propiedad. El Art. II, Sec. 9 establece, además, que:

"No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. . . ."

Similar protección al derecho de propiedad se encuentra en la Constitución de los Estados Unidos. Dice la Quinta

474

Enmienda: ". . . [nadie] . . . será privado de su vida, de su libertad o de su propiedad, sin el debido proceso de ley; ni se podrá tomar propiedad privada para uso público sin justa compensación."

■ La acción de "expropiación inversa" tiene el propósito de servir de protección a los propietarios para que el Estado cumpla con las disposiciones constitucionales garantizando que nadie será privado de su propiedad sin el debido procedimiento de ley y sin haber mediado compensación.(²)

Nos preocupa profundamente el método de clasificación de terrenos para fines públicos que se viene utilizando aquí, sin que exista una limitación a la inacción del Estado a tomar acción afirmativa. Ver Negrón García, Luis F. "La Planificación Urbana en Puerto Rico y El Debido Procedimiento de Ley, 36 Rev. Jur. U.P.R. 63, 70–71 (1967). La norma del *término razonable* sugerida por este Tribunal en algunos casos (*Segarra* v. *Junta de Planificación,* supra; *Waymouth* v. *Junta de Planificación,* 80 D.P.R. 619 (1958)) nos parece que provoca diferencias, aun entre mentes razonables, con el consecuente aumento en las contiendas en el foro administrativo y el judicial con los gastos, molestias y dilaciones resultantes.

Una clasificación "P" constituye casi una total congelación. El propietario no puede utilizarlo durante el tiempo que esté así clasificado. Suena casi a una expropiación aunque sin compensación. Parece que el poder de policía del Estado se funde en el de expropiación. Urge ya que las autoridades correspondientes le presten su atención a estas inequidades

---

(²) El Profesor Daniel R. Mandelker dice en su libro *Managing Our Urban Environment* que *"Inverse Condemnation"* es:

". . . a technique generally unoticed [*sic*] in the scholarly journals, can be used by the uncompensated landowner to force payment for property taken when the public agency has refused to compensate. . . . In most states the inverse condemnation action is self-executing, which means that it can be brought under the constitutional eminent domain clause even in the absence of enabling legislation. . . ."

en el sistema vigente de clasificación de terrenos con miras a corregirlas en bien de una sana administración pública. Se ha señalado como una "falla básica" el métodc que ha seguido la Junta en la clasificación de distritos para fines públicos. El Profesor Miguel A. Velázquez Rivera observa:

"Otra falla básica se encuentra en el método que ha seguido la Junta en la clasificación de distritos separados para fines públicos en el Reglamento de Zonificación. Una vez que la Junta de Planificación clasifica un determinado solar o lote como Distrito P (Proyectos Públicos) dicho solar o lote queda congelado para todos los efectos prácticos. El propietario no puede utilizarlo durante el tiempo en que se mantenga tal clasificación, o hasta tanto el solar sea adquirido por el gobierno mediante compra o expropiación forzosa. Ni la ley, ni los reglamentos de planificación han limitado el número de años durante los cuales un solar clasificado como Distrito P puede ser mantenido en tal situación. Si el Gobierno no lo adquiere durante un término razonable, el resultado práctico es que el ciudadano se ve limitado en su derecho constitucional de no ser privado de su propiedad sin la justa compensación. En algunas ocasiones, luego de transcurrir un número de años, el Gobierno desiste de realizar las obras públicas para las cuales se ha reservado el solar. En tales casos, la norma que se sigue es la de devolver el solar a su propietario sin pagarle compensación alguna por la pérdida de uso. Durante años el ciudadano afectado por la clasificación venía obligado a pagar contribuciones sobre el solar, a pesar de que no tenía el libre uso y disfrute del mismo. Finalmente, y a virtud de la Ley Número 70 de 18 de junio de 1954 se declararon exentas de contribución las propiedades en estas circunstancias." Vol. XXII Revista del Colegio de Abogados de Puerto Rico Núm. 4, págs. 445, 464–465, agosto, 1962.

Véase Netherton, R. D., *Implementation of Land Use Policy: Police Power v. Eminent Domain*, III Land and Water L. Rev., pág. 1 (1968).

■ La demandante alega que por ser auto-ejecutables las disposiciones constitucionales invocadas, *Alberio Quiñones* v. *E.L.A.*, 90 D.P.R. 812, 816 (1964), no tiene que agotar los remedios administrativos. En efecto así ha sido resuelto

en algunos sitios. *Sneed* v. *County of Riverside*, 32 Cal. Reptr. 318, 218 Cal. App. 2d 205 (1963).

■ Preferimos no mover nuestro brazo por el momento. Heftler puede y debe recurrir a la Junta. En realidad su actitud de inacción, con excepción de una mera consulta en el 1965, mantenida durante estos años no le ha ayudado en este caso. En Puerto Rico siempre hemos insistido en que se deben utilizar los remedios administrativos disponibles antes de acudir a los tribunales. En realidad en este caso esto parece ser lo más conveniente en buen orden en la administración de la justicia y así ". . . armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva". *E.L.A.* v. *12,974.78 Metros Cuadrados*, 90 D.P.R. 506, 511 (1964). Escojemos, pues, este camino siguiendo la norma establecida en *Waymouth Corp.* v. *Junta de Planificación*, supra, a la pág. 622:

"[2, 3] El hecho de que gran parte de estos terrenos estén separados para uso público, no significa que el derecho de propiedad sobre los mismos esté totalmente supendido. La propia Junta ante nos admite que la separación de determinado terreno para uso público no implica una congelación del derecho de propiedad. Si esto es así, en un caso como éste, la Junta debe determinar si por el transcurso del tiempo o por la improbabilidad de que dichos terrenos sean utilizados para un fin público inmediato, la norma de razonabilidad establecida por nuestra jurisprudencia le daría base a ella para denegar cualquiera lotificación de los mismos, *Segarra* v. *Junta de Planificación* 71 D.P.R. 150 (Snyder) (1950), cita precisa a las págs. 153 y 154. Lo que se propone esta norma es evitar la especulación del propietario con la necesidad pública, encareciendo el valor de la expropiación o forzando al Estado a anticipar sus planes, pero al mismo tiempo, protegiendo al propietario contra cualesquiera inercia o extravagancia del poder de policía del Estado. Dar como negativa indeterminada la simple reserva para uso público no es razón suficiente para denegar una solicitud de lotificación, máxime en un caso como éste, en que posiblemente no todos los terrenos comprendidos en la solicitud sean necesarios al uso público. *Lo más aconsejable en este momento es*

*devolver el caso para que la Junta determine no sólo la razonabilidad del tiempo que ha transcurrido desde la declaración de la reserva para uso público, sin que el Estado haya iniciado el trámite de la expropiación, sino también cuánto tiempo más durará el trámite de la expropiación, para que este Tribunal esté en condiciones de determinar, como cuestión de derecho, si la negativa a que su dueño use de su propiedad, resulta arbitraria, irrazonable o confiscatoria."* (Bastardillas nuestras.)

■ Heftler tenía disponibles los siguientes remedios sin que hiciera uso de ninguno antes de radicar su demanda ante el Tribunal Superior:

1. Solicitar la reconsideración del dictamen de la Junta en relación con su "consulta".

2. Apelar ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones. 23 L.P.R.A. sec. 28.

3. Solicitar reconsideración de la decisión adversa de la Junta de Apelaciones. 23 L.P.R.A. sec. 28(c).

4. Solicitar una rezonificación del terreno.

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández, y el Juez Asociado Señor Santana Becerra no intervinieron.