FLAMBOYÁN GARDENS, INC., peticionaria y recurrente, *v.* JUNTA DE PLANIFICACIÓN DE PUERTO RICO, demandada y recurrida.

*Número:* O-71-294       *Resuelto:* 28 de mayo de 1975

*Trías, Saldaña & Francis,* abogados de la recurrente; *Gilberto Gierbolini* y *Myriam Naveira de Rodón, Procuradores Generales, Peter Ortiz, Subprocurador General, Augusto A. Cirino* y *Américo Serra, Procuradores Generales Auxiliares,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

La Junta de Planificación aprobó en el 1965 la inscripción parcial de un número de solares del bloque "L" de la Urbanización Flamboyán Gardens de Bayamón. Excluyó de la aprobación los solares números 1 y 23 por estar éstos afectados por la futura intersección de la Carretera Expreso Río Hondo y la Avenida 65 de Infantería. Posteriormente, en el 1969, la Junta enmendó su informe para dejar sin efecto la aproba-

ción de la inscripción final de los solares 2, 3, y 17 al 22 consignando como fundamento lo siguiente:

"Luego de efectuarse un nuevo análisis más detallado de esta situación, se ha encontrado que además de los solares 1 y 23, debieron haberse excluido de la aprobación del plano de inscripción final, los solares 2, 3, y 17 al 22 (ambos inclusive), ya que los mismos, hasta donde se ha estudiado en el diseño preliminar preparado por la firma de consultores de Salvador Padilla y Asociado para el Expreso Río Hondo quedarán afectados por la referida intersección." (Extensión al Informe Número 66-L-089-DA.)

La Junta denegó la solicitud de reconsideración presentada oportunamente por Flamboyán Gardens, Inc. Esta acudió en revisión al Tribunal Superior aduciendo que la Junta de Planificación no tenía facultad en ley para denegar la inscripción de los mencionados solares ya que el trazado de la futura intersección Expreso Río Hondo y la Avenida 65 de Infantería no aparecía en el Plano Regulador de Carreteras Estatales y Municipales ni en el Mapa Oficial. Argumentó, además, que los estudios y diseños preliminares preparados por la firma de consultores Salvador Padilla y Asociado no podían servir de base a la Junta para requerir reservas de terrenos para ser utilizados en la futura construcción de carreteras y avenidas porque la Ley de Planificación provee otros mecanismos para este propósito, constituyendo por tanto, la actuación de la Junta una privación del derecho de propiedad sin el debido procedimiento de ley.

El tribunal de instancia confirmó la actuación de la Junta de Planificación fundándose en que aceptar como correcta la contención de Flamboyán Gardens, Inc., convertiría a la Junta de Planificación en un organismo de funciones estáticas, inefectivas para controlar en forma dinámica el continuo desarrollo urbano. Con respecto a la súplica de Flamboyán de que se ordenara la expropiación de los solares concernidos, el tribunal resolvió que no tenía jurisdicción porque la peticionaria no había agotado los remedios administrativos.

En su solicitud de *certiorari* ante este Tribunal, Flamboyán Gardens, Inc., señala que: 1) el tribunal de instancia incurrió en error al asumir que la Junta de Planificación puede prohibir indefinidamente, o por término irrazonable, la construcción en terrenos que presumiblemente puedan necesitarse para futuras vías públicas, cuando tales vías no constan en el Plano Regulador o en el Mapa Oficial, y 2) que también incurrió en error al resolver que la peticionaria no ha agotado sus remedios administrativos y al rehusar considerar en consecuencia si ha transcurrido un plazo irrazonable desde la congelación de los solares.

I. Aunque de genuino interés y ciertamente muy bien analizado en el alegato de la peticionaria no podemos considerar el primer apuntamiento de error. Cerca de seis meses antes de dictada la sentencia en este caso el Gobernador de Puerto Rico aprobó el 21 de mayo de 1971 el Plano Regulador de Uso de Terrenos y Transportación, que incluye el trazado de la futura intersección del Expreso Río Hondo y la Avenida 65 de Infantería. Cualquier discusión del planteamiento a estas alturas sería un mero ejercicio de especulación teórica.

La propia peticionaria advirtiendo la futilidad del planteamiento juiciosamente limita en su alegato su pedimento original y nos suplica que devolvamos el caso a la Junta de Planificación, cuestión sobre la que proveeremos más adelante.

II. Insiste, sin embargo, en que no debemos tomar en consideración la aprobación del Plano Regulador de Usos de Terrenos y Transportación porque, a su juicio, el mismo no tiene eficacia legal por no haberse publicado previamente en el Boletín del Estado Libre Asociado de Puerto Rico, según lo requiere la Ley sobre Reglamentos de 1958, Ley Núm. 112 de 30 de junio de 1957, 3 L.P.R.A. secs. 1041–1059. No tiene razón.

Es cierto que la Ley sobre Reglamentos niega eficacia legal a los reglamentos aprobados por agencias gubernamentales que no hayan sido publicados en el Boletín del Estado

888

Libre Asociado de Puerto Rico. Art. 6, 3 L.P.R.A. sec. 1046. No obstante, el Art. 8 de la Ley de Planificación taxativamente provee que los planos reguladores tendrán vigencia inmediatamente al ser aprobados por el Gobernador. Al respecto dispone dicho artículo que:

"El Plano Regulador o cualquier parte de éste que la Junta adopte regirá inmediatamente después de aprobado por el Gobernador. Copia de todo plano regulador o parte del plano regulador adoptado por la Junta según aquí se dispone será sometida a la Asamblea Legislativa. Esta podrá expresar su desacuerdo con cualquier aspecto general del plano regulador mediante resolución concurrente que apruebe al efecto. Dicha acción dejará en suspenso la parte así objetada por la Asamblea Legislativa." 23 L.P.R.A. sec. 8.

En 1964 la Asamblea Legislativa llevó a cabo una revisión de la Ley de Planificación y Presupuesto, *supra*, enmendando el Art. 8 precisamente en el párrafo que hemos reproducido para adicionarle las dos últimas oraciones. Ley Núm. 116 de 29 de junio de 1964. La peticionaria despacha el alcance de esta enmienda caracterizándola como una simple repetición mecánica del lenguaje original del estatuto, por lo cual debemos hacer caso omiso de ella. Aparte del conocido principio que destaca la supremacía de la ley más reciente sobre la anterior, no podemos imputarle a la Asamblea Legislativa la realización de un acto inútil al aprobar la enmienda del Art. 8 en el 1964. Menos aún cuando el texto del Art. 8 revela tan claramente la intención de que el plano regulador o la parte de éste que se adopte "regirá inmediatamente después de aprobado por el Gobernador."

III. Estamos de acuerdo con la peticionaria en que ella agotó los remedios administrativos, siendo, por tanto, errónea la conclusión que en sentido contrario hizo el tribunal de instancia.

Lo resuelto en *Heftler International, Inc.* v. *J. de P.*, 99 D.P.R. 467 (1970) y en *Vda. de Iturregui* v. *E.L.A.*

99 D.P.R. 488 (1970), no se aplica al caso de autos, pues, aquí el peticionario solicitó a su debido tiempo reconsideración a la Junta de Planificación, y, una vez ésta fue denegada, interpuso recurso de revisión en el Tribunal Superior. Este era el único camino expedito para revisar la determinación de la Junta ya que las determinaciones de la Junta de Planificación relacionadas con planos o proyectos de urbanización, como es la que está aquí en controversia, son revisadas directamente por el Tribunal Superior, sin que sea necesario acudir primero a la Junta de Apelaciones, conforme provee el Art. 28(a):

"Cualquier parte afectada por una actuación, decisión o resolución de la Junta de Planificación de Puerto Rico sobre casos o planos de urbanizaciones en relación con la cual una petición de reconsideración hubiera sido formulada y denegada, podrá entablar recurso de revisión ante la Sala de San Juan del Tribunal Superior de Puerto Rico, dentro del término de treinta (30) días contados a partir de la fecha del depósito en el correo de la notificación de la denegatoria de la solicitud de reconsideración. Se entenderá por urbanización toda segregación, división o subdivisión de un predio de terreno que, por las obras a realizarse para la formación de los solares, no esté comprendida en el término 'lotificación simple' según se define en el inciso (a) de la sec. 28 de este título."

La peticionaria no tenía a su disposición ningún otro remedio administrativo como lo tuvo *Heftler International, Inc., supra*. No podía solicitar revisión a la Junta de Apelaciones sobre Construcciones y Lotificaciones porque ésta no tenía jurisdicción en el caso.

■ La Junta de Apelaciones es un organismo de poderes limitados. Su ámbito jurisdiccional está prescrito en la Ley de Planificación y se circunscribe a casos de variaciones y excepciones y a casos o planos de lotificación simple. Art. 28 de la Ley de Planificación, 23 L.P.R.A. sec. 28, Art. 11 de la Ley del Negociado de Permisos, 23 L.P.R.A. sec. 41, *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87 (1974).

El Art. 11 de la Ley del Negociado de Permisos, *supra*,

delimita con lenguaje claro y preciso el ámbito jurisdiccional de la Junta de Apelaciones en la siguiente forma:

"Las decisiones y actuaciones del Oficial de Permisos y las actuaciones, decisiones y resoluciones de la Junta de Planificación de Puerto Rico relacionados con casos o planos de lotificación simple serán revisados en apelación por la Junta de Apelaciones."

Precisamente para aclarar la jurisdicción apelativa de la Junta de Apelaciones se enmendó el citado Art. 11 en el 1963 para disponer que la misma se limitaría, en lo que a la Junta de Planificación respecta, a planos y casos de lotificación simple pero no a casos o planos de urbanización. Ley Núm. 94 de 29 de junio de 1963. "Considerar a la Junta de Apelaciones con jurisdicción para intervenir en todos los casos de la Junta de Planificación, tiende a destruir virtualmente las funciones que ejerce la Junta de Planificación y la misma equivale a superimponer a la Junta otro organismo con iguales o mayores poderes." Informe de la Comisión de Gobierno Estatal de la Cámara sobre el P. de la C. 798 que se convirtió en la citada Ley Núm. 94 de 1963.

Es claro, pues, que la Junta de Apelaciones no tiene jurisdicción para revisar determinaciones de la Junta de Planificación relacionadas con casos o planos de urbanizaciones. En tanto en cuanto en *Vda. de Iturregui* v. *E.L.A.*, *supra*, expresamos a la pág. 493 que la resolución de la Junta de Planificación sobre una consulta de ubicación de un proyecto de urbanización residencial debió ser revisado en primer término por la Junta de Apelaciones antes de acudirse en revisión al Tribunal Superior, es erróneo y a este respecto dicho caso debe considerarse revocado.

IV. Habiendo agotado la peticionaria los remedios administrativos procedía que el tribunal de instancia considerara la razonabilidad del tiempo transcurrido desde que la Junta de Planificación paralizó el desarrollo de los solares concernidos. La peticionaria discute en un documentado alegato esta cues-

tión, que como se sabe, ha sido motivo de preocupación en este Tribunal, *Heftler International, Inc.* v. *J. de P.*, supra, a la pág. 474, *Waymouth Corp.* v. *Junta Planificación*, 80 D.P.R. 619 (1958), *Segarra* v. *Junta de Planificación*, 71 D.P.R. 150 (1950).

La peticionaria nos sugiere que fijemos un término de cinco años como plazo máximo para la paralización del uso de terrenos por la Junta de Planificación, que es el término considerado como razonable por el Código Modelo. En *Model Land Development Code*, The American Law Institute, T.D. No. 2, 1970.

No nos parece deseable fijar en términos tan absolutos la norma de razonabilidad. Estamos en un campo de fricción de intereses en que la flexibilidad en el enfoque es esencial para que la norma sea útil y justa. Son múltiples y diversas las circunstancias que concurren en cada caso y, por eso, es necesario formular criterios flexibles que permitan armonizar los intereses en conflicto; de un lado el interés particular del dueño del terreno en desarrollarlo en la forma más beneficiosa para él, y de otro, el interés público en preservar, como en este caso, libre de construcción los terrenos por donde han de pasar las futuras vías públicas, o donde se habrán de construir otras mejoras públicas, de manera de no imponer a la sociedad la carga onerosa de tener que pagar luego por las edificaciones construidas en dichos terrenos.

A tono con el principio fundamental de flexibilidad, el tribunal de instancia, al determinar la razonabilidad del tiempo transcurrido debe tomar en cuenta, entre otros, los siguientes factores: a) la naturaleza de la mejora pública que requiere la paralización del uso de terrenos, b) prioridad de la misma en el programa de mejoras públicas, c) costo del terreno y recursos disponibles, d) magnitud del perjuicio al dueño del terreno; si se trata de un proyecto de urbanización como en este caso, debe considerarse el valor de los terrenos congelados en relación con el desarrollo total aprobado, e) la posibilidad de otros usos productivos del terreno que no hagan más

892

oneroso el desarrollo de la futura mejora pública; y, por supuesto, (f) la extensión del término transcurrido.

Ha de devolverse el caso al tribunal de instancia para que celebre una vista en que las partes tengan la oportunidad de presentar prueba sobre los criterios mencionados y sobre cualesquiera otras circunstancias especiales del caso y determine si la duración del término transcurrido desde que se paralizó el uso de los solares en cuestión es o no razonable.

*Se dictará sentencia conforme con lo anteriormente expuesto.*

El Juez Presidente, Señor Trías Monge, no intervino.