*1107 TEXTO COMPLETO DE LA SENTENCIA
El recurrente James Rodríguez Colom solicita la revocación de la Resolución emitida por la Junta de Planificación (“Junta”) el 7 de octubre de 2009. Mediante dicho dictamen, notificado a las partes el 4 de noviembre de 2009, la Junta autorizó una enmienda a la consulta número 1999-77-0489-JPU para la ubicación de un proyecto residencial multifamiliar en el Barrio San Isidro y Frailes del Municipio de Culebra, según solicitado por el recurrido, Desarrollos El Cayo, S.E. por conducto del arquitecto José C. Joglar Castillo.
De otra parte, el 20 de enero de 2010, el recurrido presentó su oposición al recurso. Luego de la concesión de una prórroga, el 2 de febrero de 2010, la Junta presentó su alegato en oposición.
Resolvemos con el beneficio de la comparecencia de las partes, el derecho y la jurisprudencia aplicable.
I
El 28 de mayo de 1999, el recurrido presentó una consulta de ubicación consistente de 27 solares y 18 apartamentos en una finca de una cabida superficial de 32.18 cuerdas, ubicada en el camino municipal Soni, Sector El Cayo, Barrio San Isidro y Frailes en el Municipio de Culebra. Los terrenos a desarrollarse están clasificados como RO-25-C. Según solicitado, el 22 de febrero de 2000, la Junta aprobó la consulta.
El 8 de abril de 2003, el recurrido presentó una enmienda a la consulta de ubicación aprobada a los fines de cambiar que los 27 solares aprobados se convirtieran en apartamentos para un total de 45. Esta enmienda fue aprobada por la Junta el 21 de marzo de 2005.
Por su parte, el 23 de junio de 2005, la Junta admitió como interventor al recurrente. En desacuerdo con el proyecto, el 28 de junio de 2005, el recurrente acudió en revisión judicial a este Foro bajo el recurso KLRA-2005-00438. En su recurso, adujo que incidió la Junta al aprobar la enmienda del 2003, ya que no se había celebrado una vista pública y no se había cumplido con el trámite ambiental. Mediante Sentencia de 12 de mayo de 2006, este Foro Apelativo revocó la mencionada enmienda.
Posteriormente, el 29 de enero de 2007, el recurrido presentó una segunda enmienda a la consulta de ubicación para añadir unos 14 apartamentos a los 45 propuestos en la primera enmienda de 2004, para un total de 59 apartamentos. El proyecto se dividiría en tres (3) fases: una primera fase de 18 apartamentos, segunda fase de 27 apartamentos y una tercera fase de 14 apartamentos. Durante el trámite de esta enmienda, el 15 de febrero de 2007, la Junta le solicitó al recurrido las direcciones de los vecinos circundantes del proyecto dentro de un radio de 100 metros desde el límite de su propiedad, ello para citarles para la celebración de una vista pública.
Así pues, el 5 de marzo de 2007, la Autoridad de Conservación y Desarrollo de Culebra (ACDC) emitió una comunicación denegando la enmienda propuesta del recurrido. En atención a ello, el 20 de abril de 2007, el recurrido sometió una copia enmendada del plano del proyecto eliminando los 14 apartamentos rechazados por la ACDC. Por ello, el proyecto quedó reducido a un proyecto residencial multifamiliar de 45 apartamentos que se construiría en dos (2) fases; el área residencial ocupará 6.08 cuerdas para un total de 18.9%; se propone un área de conservación de 12.55 cuerdas para un 38.8%; y un remanente de 13.55 cuerdas para un 45.3%.
*1108 Posteriormente, en agosto de 2007, el recurrido sometió una enmienda al documento titulado Evaluación Ambiental. Entre las agencias gubernamentales que emitieron comentarios sobre el proyecto estuvo la Autoridad de Energía Eléctrica (AEE) quien expresó su anuencia al proyecto siempre y cuando se cumplieran con varios requisitos y el Departamento de Recursos Naturales y Ambientales (DRNA) que indicó que el sistema sanitario propuesto no era aceptable, pues era necesario la utilización de un tanque soterrado sellado para el manejo de aguas usadas, ya que de lo contrario se impactaría adversamente las áreas circundantes. Así también, la Autoridad de Acueductos y Alcantarillados (AAA) expresó su oposición, pues para suplir la necesidad de servicio tendría que formar parte de el Combinado Naguabo-Vieques-Culebra que aún no se ha creado; así también señaló la falta de alcantarillado en el área. El 24 de octubre de 2008, la Junta de Calidad Ambiental (JCA) emitió comunicación indicando que el documento ambiental sometido por el recurrido cumplía con la legislación sobre política ambiental aplicable. Sin embargo, las siguientes agencias no fueron consultadas sobre la consulta de ubicación; el Cuerpo de Ingenieros y el Servicio de Pesca y Vida Silvestre de los Estados Unidos, la Autoridad de Desperdicios Sólidos y el Municipio de Culebra.
Por su parte, el 5 de noviembre de 2008, la Junta publicó un Aviso de Vista Pública a celebrarse el 5 de diciembre de 2008. Dicho Aviso, según el recurrente, no incluyó la advertencia de que la consulta de ubicación proponía la rezonificación del predio de un Distrito RO-25-C y variaciones. Ese mismo día se colocó el rótulo anunciando la celebración de la vista pública. Este Aviso sólo fue notificado a los colindantes inmediatos de la propiedad objeto de la consulta de ubicación, pues a esa fecha ese era el requisito dispuesto por el Reglamento de Procedimientos Adjudicativos de 2008.
El 20 de noviembre de 2008, el recurrente presentó una Moción Solicitando Suspensión de Vista Pública bajo el fundamento de falta de jurisdicción. Este escrito fue replicado por el recurrido el 25 de noviembre de 2008. En atención a los escritos de las partes, el 1 de diciembre de 2008, la Junta emitió Resolución declarando No Ha Lugar la solicitud de suspensión del recurrente. En esa misma fecha, el señor Miguel José Santaella presentó solicitud de intervención la cual fue declarada Con Lugar el 2 de diciembre de 2008.
La vista administrativa fue señalada para los días 5 de diciembre de 2008, 23 y 24 de febrero y 21 y 22 de abril de 2009. Durante las audiencias prestó testimonio el ingeniero Luis Martínez Pueyo, quien describió que el 75% del predio sería destinado a conservación por ser escarpado; señaló que el Municipio de Culebra experimenta una deficiencia en el servicio de acueductos y alcantarillados, además que sólo se rezonificarán 6.08 cuerdas de los apartamentos más el “área a dedicarse a conservación.” Adujo que los desperdicios sólidos del proyecto se depositarían en el vertedero del Municipio de Culebra; no obstante, admitió que desconocía si dicho lugar tenía capacidad para recibir los mismos y que la consulta no había sido evaluada por la Administración de Desperdicios Sólidos. Por el interventor-recurrente testificó el ingeniero Ángel Herrera quien luego de analizar los documentos sometidos por el recurrido adujo que la consulta constituye una variación en uso que no ha sido justificada, que propone una densidad mucho mayor a la permitida en un Distrito RO-l-C, o sea conlleva una variación al uso propuesto, según él, el proyecto no cumple con los Objetivos y Políticas del Plan de Usos de Terrenos. Comentó además, sobre la falta de comentarios de la Autoridad de Desperdicios Sólidos, el Cuerpo de Ingenieros y Pesca y Vida Silvestre, entre otras. Testificó además en apoyo a la contención del otro interventor Miguel José Santaella Hernández, el economista Jaime Del Valle Caballero, quien expresó que no se había justificado la necesidad de la enmienda al proyecto propuesto, pues no existía evidencia en el expediente.
A la vista compareció el licenciado Rafael M. Espasas García en representación de la Fundación Conservación Marina de Culebra y expresó que su representado se opone al proyecto, ya que las escorrentías descargarán en Ensenada Honda y los mangles teniendo un efecto adverso en los corales y la vida silvestre del área. Adujo además, que el vertedero de Culebra no tiene capacidad suficiente para recibir los desperdicios sólidos que el proyecto produzca y no existe demanda para el desarrollo de apartamentos veraniegos en Culebra. Posteriormente, el 3 de marzo de 2009, el recurrido notificó la ponencia del Ing. Luis Martínez Pueyo. *1109 El 14 de mayo de 2009, el recurrente presentó la ponencia de su perito el Ing. Ángel Herrera, la cual fue replicada el 9 de julio por el recurrido. El 31 de julio de 2009, tanto el recurrente como el recurrido presentaron sus memorandos post vista.
Finalmente, el 7 de octubre de 2009, la Junta emitió Resolución autorizando una enmienda a la consulta número 1999-77-0489-JPU para la ubicación de un proyecto residencial multifamiliar en el Barrio San Isidro y Frailes del Municipio de Culebra según solicitado por el recurrido.
Inconforme, el 3 de diciembre de 2009, el recurrente presentó su recurso de revisión. Adujo la comisión de los siguientes señalamientos:
“ Erró la Junta al evaluar la consulta de ubicación bajo los Reglamentos de Calificación y de Procedimientos Adjudicativos del 2008-2009 y no bajo el Reglamento de Zonificación del 2000.
Erró la Junta al aprobar la consulta de ubicación sin que las vistas públicas hubiesen sido notificadas a los dueños de propiedades dentro del radio de 100 metros.
Erró la Junta al aprobar la consulta de ubicación sin que las vistas públicas fueran notificadas al público conforme a derecho.
Erró la Junta al aprobar la consulta de ubicación a pesar que la densidad propuesta no está permitida en el Distrito RO-1C.
Erró la Junta al aprobar la consulta de ubicación a pesar de que se propone un uso no permitido en los Distritos RO-1C.
Erró la Junta al aprobar la consulta de ubicación sin que las variaciones de uso y densidad hubiesen sido solicitadas y/o justificadas.
Erró la Junta al aprobar la consulta de ubicación a pesar de que no se cumple con los objetivos y políticas públicas del Plan de Usos de Terrenos.
Erró la Junta al aprobar la consulta de ubicación sin que se hubiese preparado una Declaración de Impacto Ambiental.”
n
Como es conocido, las determinaciones de hechos de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección. Empresas Toledo v. Junta, 168 D.P.R. 771, 783 (2006). En virtud de ello, “[l]a LPAU dispone que las determinaciones de hechos de las agencias serán sostenidas por los tribunales si se basan en evidencia sustancial que obre en el expediente administrativo... siendo evidencia sustancial aquella que una mente razonable podría aceptar como adecuada para sostener una conclusión. Lo anterior, pretende evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor.” Vázquez Cintrón v. Banco de Desarrollo Económico, res. el 9 de mayo de 2007, 2007 J.T.S. 91.
Ha indicado nuestro Tribunal Supremo que esta norma impone a los tribunales apelativos “la obligación de examinar la totalidad de la prueba sometida a la agencia según consta en el expediente administrativo”. López Echevarría v. Administración, 168 D.P.R. 749, 752-753 (2006); Assoc. Ins. Agencias v. Com. Seg. P.R., 144 D.P.R. 425, 435 (1997). Para que un tribunal revisor pueda decidir que la determinación de una agencia no está fundamentada en evidencia sustancial, se tiene que demostrar que hay otra prueba en el expediente *1110 administrativo que claramente reduce o menoscaba el peso de la prueba que sostiene la determinación administrativa. Esta prueba tiene que llevar al tribunal a concluir que la agencia fue arbitraria y que la determinación no responde a una evaluación razonable de toda la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway, 148 D.P.R. 387, 398 (1999); Misión Industrial v. Junta de Planificación, 146 D.P.R. 64, 131 (1998); Hilton Hotels v. Junta Salario Mínimo, 1A D.P.R. 670, 687 (1953). Si efectivamente el expediente administrativo carece de esa evidencia sustancial, los tribunales apelativos estaríamos obligados a revocar o a modificar la determinación recurrida.
En resumen, la revisión judicial de las determinaciones administrativas se limita a determinar si su actuación fue razonable y sólo cederá cuando esté presente alguna de las siguientes situaciones: (1) cuando la decisión no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3) cuando ha mediado una actuación irrazonable o ilegal. Marina Costa Azul v. Comisión de Seguridad, res. el 27 de abril de 2007, 2007 J.T.S. 83; Otero v. Toyota, 163 D.P.R. 716, 729 (2005).
De otra parte, la Ley Núm. 91 de 24 de junio de 1998, 23 L.P.R.A. § 62c, conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico, creó dicho organismo con el propósito de guiar el desarrollo integral de Puerto Rico de modo coordinado y con el fin de fomentar la salud, seguridad, orden, convivencia y el bienestar de los actuales y futuros habitantes de nuestro país. Así, faculta a la Junta para controlar el uso y desarrollo de los terrenos en Puerto Rico tanto en áreas urbanas como rurales.
La consulta de ubicación es el instrumento mediante el cual la Junta autoriza el uso particular de un terreno. Este procedimiento está gobernado específicamente por la Ley Orgánica de la Junta de Planificación, 23 L.P.R. A. § 62-63j, y el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación de 2009. Si fuera necesario hacer cambios al proyecto que alteren la consulta según fue aprobada, la parte proponente debe presentar una solicitud de enmienda debidamente fundamentada y documentada. La Junta podrá exigir la radicación de una nueva consulta dependiendo de la naturaleza y magnitud de los cambios propuestos en relación con la consulta original. La radicación de una solicitud de enmienda antes de que la Junta resuelva la consulta original pudiera tener el efecto de reiniciar cualquier trámite interagencial.
Para analizar los errores primero, segundo y tercero, debemos examinar la normativa sobre la reglamentación aplicable a una consulta de ubicación pendiente ante la agencia.
En nuestro ordenamiento jurídico existe un principio de derecho sobre la supremacía de la ley más reciente sobre la anterior. Flamboyán Gardens v. Junta de Planificación, 103 D.P.R. 884, 888 (1975). Este principio está presente tanto en procesos judiciales como administrativos, más aún cuando se trata de reglamentaciones sobre leyes especiales que requieren la pericia del organismo administrativo. Ello es cónsono con la norma de que las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan y, una vez la norma particular es adoptada, es obligación de la agencia administrativa el cumplir y aplicarla en la manera en que la misma fue concebida. Esta práctica debe llevarse a cabo siempre ajustada a los propósitos, objetivos y política pública que la forjaron. T-Jac, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 81 (1999).
En el caso de autos, la Junta utilizó el reglamento vigente al momento de disponer sobre la consulta de ubicación, actuación conforme a la doctrina antes reseñada. Entendemos que el fundamento del recurrente carece de mérito, toda vez que hace una interpretación errónea de lo resuelto en el caso de Maldonado v. Junta, res. el 10 de mayo de 2007, 2007 J.T.S. 92. En ese caso, nuestro Tribunal Supremo adujo en cuanto a la aplicación temporal de los reglamentos, que un reglamento aprobado luego de haberse presentado una consulta de ubicación, puede ser fundamento suficiente para denegar la consulta si al momento de su presentación “el proceso de aprobación de la misma [la reglamentación] ya había comenzado oficialmente y... se habían hecho gestiones tendentes a informar al pueblo sobre el particular”. íd., a la pág. 21. Vale destacar que la enmienda a *1111 la consulta de ubicación de autos fue presentada inicialmente el 8 de abril de 2003. Posteriormente, estando pendiente de adjudicación entró en vigor el Reglamento de Calificación de 2008, el cual fue luego enmendado por el de 2009. Es decir, conforme a la normativa antes expuesta, la Junta tenía la obligación legal de aplicar las disposiciones reglamentarias más recientes y vigentes al momento de pasar juicio sobre la consulta de ubicación en controversia. De la Resolución recurrida surge con claridad que el trámite otorgado por la Junta a la consulta de ubicación se fue atemperando según cambiaban los requisitos reglamentarios que rigen estos procesos; por ello, inicialmente se le pidió al recurrido la dirección de los vecinos en un radio de 100 metros, luego sólo de los colindantes y la colocación de un aviso en el predio, según disponían los reglamentos de 2000 y 2009, respectivamente. Contrario a lo aseverado por el recurrente, la Junta podía al amparo del caso de Maldonado v. Junta, supra, aplicar disposiciones pendientes de aprobación así como las ya vigentes, como correctamente hiciera. Además, no podemos perder de perspectiva que los nuevos requisitos sobre notificación de las vistas públicas viabilizan aún más la participación ciudadana en los proyectos propuestos. Por lo cual, consideramos que no incidió la Junta en los errores señalados.
El recurrente adujo en su cuarto, quinto y sexto señalamiento de error que incidió la Junta al aprobar la consulta con una densidad y un uso no permitido en un distrito RO-1C sin que ello fuese solicitado. Veamos.
Como cuestión de umbral antes de entrar en la discusión de la norma aplicable debemos aclarar que la consulta aprobada no cambió la calificación del predio, pues no convirtió el distrito en uno distinto. Sólo se aprobó la realización de un proyecto con unos parámetros de construcción distintos a los del distrito que ostenta el predio sin cambiar su calificación.
El Reglamento de Calificación de 2009 reconoce la facultad discrecional a la Junta para aprobar proyectos con una densidad o intensidad mayor a la que permite el distrito en que ubica el predio en consulta. Específicamente, la Sección 60.00 dispone:
“60.00 PROYECTOS CON CARACTERÍSTICAS ESPECIALES
60.01 Propósito
La Junta podrá considerar mediante consulta de ubicación los siguientes proyectos:
1. Aquellos en los que se propone una densidad o intensidad mayor a la que permite el distrito en que ubica o requieren un diseño particular para atender situaciones especiales, pero que no hay un distrito específico que tenga los parámetros necesarios.
2. Proyectos específicos que por su naturaleza e intensidad requieren una ubicación especial, tales como proyectos industriales pesados y vertederos, entre otros.
3. Proyectos en los que se propone un desarrollo en un solar con mayor o menor cabida a la establecida y que no pueda considerarse vía variación en construcción.”
Al amparo de ésta disposición, la Junta tenía la facultad discrecional de aprobar la consulta sin que ello constituyere un cambio en la calificación del predio. .Vale destacar que el recurrido en ningún momento solicitó una variación, por lo cual no tenía que justificar nada ante la agencia. En el ejercicio de su autoridad legal, la Junta autorizó el proyecto con una densidad mayor a la permitida por el distrito que ostenta, sin que ello requiriera una solicitud y justificación de una variación.
De otra parte, el Plan de Usos de Terrenos dispone una serie de objetivos y políticas con las cuales todo proyecto de construcción debe cumplir para lograr un desarrollo armonioso de aspectos económico, social y *1112 físico del país. 23 L.P.R.A. 621 (L).
En el caso de autos, la agencia con expertise sobre el desarrollo agrícola, Departamento de Agricultura, certificó que los terrenos a desarrollarse no son aptos para el uso agrícola. Considerando esta determinación, la Junta concluyó que al amparo de los Objetivos 1.1 y 1.5 del sector de la construcción, en este tipo de predio se estimula la construcción de viviendas y la planificación de viviendas múltiples. Además, determinó que se cumple con la Política VII sobre los Recursos Naturales, pues pretende lograr un equilibrio entre, la conservación al reservar 12.55 cuerdas para ello. Así también, el proyecto cumple con el Objetivo 7.2 que promueve la formulación, adopción y administración de los planes y programas para lograr la conservación, uso y desarrollo de los recursos naturales en la Isla de Culebra.
Entre sus argumentaciones, el recurrente alude a que el desarrollo del predio según propuesto tendría un impacto sobre la transportación y el alcantarillado sanitario del área. Estas preocupaciones fueron atendidas por las agencias pertinentes quienes comentaron el proyecto y le brindaron su aprobación sujeta al cumplimiento de ciertos requisitos. Específicamente, la AAA adujo que la propuesta sobre servicio de alcantarillado debía contar con la aprobación del DRNA y la JCA, pues en el área no existe alcantarillado. Además, dicha agencia advirtió al recurrido que para contar con un servicio de agua potable debía formar parte del Combinado Naguabo-Vieques-Culebra que se encuentra en proyecto. Es decir, los organismos con el conocimiento especializado brindaron su anuencia al proyecto y el recurrente no ha presentado evidencia que obre en el expediente administrativo para demostrar que esa conclusión está errada. Debemos señalar además que el recurrido presentó evidencia de que en el proyecto propuesto se utilizaran adelantos tecnológicos, como por ejemplo, la utilización de celdas fotovoltaicas para la iluminación de las áreas comunes y cisternas para recoger las aguas pluviales a ser reutilizadas.
El Objetivo 1.01 del Plan de Usos de Terrenos, en lo pertinente al desarrollo urbano, establece que se deberá condicionar el desarrollo de proyectos fuera de los límites identificados en los instrumentos oficiales, solamente para atender las necesidades de la población residente del sector. Incluyendo aquellos proyectos del carácter urbano permitidos por excepción o variación, únicamente cuando cumplan con los siguientes criterios:
“Desalentar para uso urbano terrenos donde se hayan identificado especies en peligro de extinción, lugares de preservación ambiental e histórica y ecosistemas.
Promover y velar por un crecimiento perpendicular a la costa y desalentar la expansión lateral paralela a las vías primarias y con acceso directo a los mismos o donde se hayan identificado barreras costeras.
Utilizar la programación y construcción de la infraestructura como instrumento de planificación para promover el desarrollo integral de los terrenos identificados aptos.
Por su parte, el Objetivo 1.02 del documento dispone que se deberá: condicionar el desarrollo de proyectos fuera de los límites identificados en los instrumentos oficiales, solamente para atender las necesidades de la población residente del sector. Incluyendo aquellos proyectos de carácter urbano permitidos por excepción o variación, únicamente cuando cumplan con los siguientes criterios:
Que sea un proyecto pequeño que no menoscabe la política de guiar y ordenar el crecimiento urbano (no crea presión ni precedente).
Que el proyecto se pueda integrar a núcleos de áreas edificadas existente.
Que el proyecto no desvirtúe o interfiera con los propósitos para los cuales fue creado el Distrito de Zonificación donde ubique. *1113 Que exista la accesibilidad e infraestructura adecuada hacia las áreas de servicios y facilidades públicas.
Que el terreno donde ubicara el proyecto no sea de alta productividad agrícola, escarpado, contenga recursos naturales o arqueológicos de importancia, susceptible a erosión significativa, deslizamientos y o sea ambientalmente crítico.”
Al amparo de las disposiciones a las que hemos hecho referencia, la Junta concluyó que aunque "los Objetivos 1.01 y 1.02 establecen que el desarrollo fuera de los límites identificados para desarrollo urbano deberá ser condicionado para atender la población residente del sector, es necesaria la utilización de estos criterios y su consideración por analogía, debido a que el Municipio de Culebra cuenta con condiciones y características especiales.” Aunque el Plan de Usos de Terrenos de Culebra aún no se encuentra vigente, la Junta analizó el proyecto propuesto y determinó que el mismo cumple con los criterios allí expuestos, pues el municipio se considera rural y el documento propone el desarrollo de residencias vacacionales, como mecanismos de desarrollo turístico.
Así pues, el proyecto propuesto fue comentado por el DRNA y la JCA, quienes certificaron que el predio no ubica en un área donde existan especies en peligro de extinción o yacimientos culturales o históricos que puedan afectarse. Tampoco colinda con la costa o con una vía principal, por lo que su diseño no afecta o requiere ser perpendicular a éstas.
En resumen, los comentarios sobre la consulta de la AEE, la AAA y la ACDEC, llevó a la Junta a concluir que el proyecto contará con la infraestructura necesaria para proveer los servicios de energía eléctrica, agua potable e infraestructura vial, sujeta a que se cumpla con los requisitos y condiciones de dichas agencias. El recurrente no nos ha puesto en condiciones para determinar que la decisión de la Junta haya sido arbitraria o caprichosa por lo cual entendemos que no incidió en el error alegado.
En su octavo señalamiento de error, el recurrente adujo que incidió la Junta al aprobar la consulta sin una Declaración de Impacto Ambiental.
El recurrente fundamenta este error en varios señalamientos que ya fueron discutidos y aclarados, tanto en la Evaluación Ambiental, como en las vistas públicas. Inclusive fueron descartados por la propia JCA en su Oposición a Solicitud de Revisión de 21 de enero de 2009, caso KLRA-2008-01635, el cual fue desestimado por este Foro. Es decir, el recurrente reprodujo estos argumentos que ya fueron descartados en un recurso anterior ante este Tribunal. No obstante, para fines de argumentación analizaremos someramente los mismos.
Según el recurrente, por tratarse de un proyecto a construirse en fases, era necesario que se presentara una Declaración de Impacto Ambiental en lugar de una Evaluación Ambiental. Como es conocido, ios documentos ambientales son, en esencia, un instrumento para asegurar la conservación y el uso racional de los recursos naturales que se consideraran al momento de hacer planes y tomar las primeras decisiones gubernamentales sobre una propuesta que pueda tener un impacto en el medioambiente. En situaciones como la de autos, dicha declaración es sólo un instrumento de planificación. Se trata de la primera etapa de un largo camino de autorizaciones oficiales en el desarrollo de un proyecto. Misión Industrial v. Junta de Calidad Ambiental, 146 D.P.R. 64 (1998).
Las consecuencias ambientales a detallarse no son todas, sino solamente aquellas que sean significativas. "No es necesario examinar impactos remotos, triviales, o especulativos, sino aquellos que el especialista en la materia concienzudamente estima que deban detallarse". Robertson v. Methow Valley, 490 U.S. 332 (1988). Esta normativa fue reiterada por nuestro más Alto Foro indicando que no procede que se evalúen en una DIA impactos remediativos, especulativos o triviales. El criterio debe ser el de razonabilidad, según resuelto en Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263, 279 (1999).
*1114 Esta tarea corresponde a la JCA, quien es el organismo con delegación de poderes para verificar que en el documento ambiental se discutan adecuadamente los impactos previsibles al ambiente, y esto es exactamente lo que ocurrió en este caso. En su comunicación de 24 de octubre de 2008, la JCA otorgó cumplimiento ambiental. Así también, el DRNA emitió su endoso al proyecto mediante carta del 6 de febrero de 2009, dejando claro que el proyecto consta de dos (2) fases las cuales la EA evaluó.
Vale destacar que la Regla 252 A del Reglamento de la Junta de Calidad Ambiental para el Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales establece:
"Se requiere la preparación de una DIA para toda acción que pueda tener un impacto significativo sobre la calidad del ambiente. Específicamente, se requerirá la preparación de una DIA cuando dicho impacto significativo pudiera ocurrir como consecuencia de factores, tales como:
“4. cualquier acción a efectuarse en etapas cada una de las cuales no requerirán una DIA, pero que en su conjunto podría tener un impacto significativo acumulativo. Tales casos requerirán una DIA que integre el impacto conjunto de todas las etapas, según pueda preverse, hasta alcanzar su desarrollo final;...". (Enfasis suplido)
Esta disposición claramente establece que se requerirá una DIA única y exclusivamente cuando la acción propuesta pueda tener un "impacto significativo sobre la calidad del ambiente". En el caso de marras la agencia concernida concluyó que la Evaluación Ambiental era suficiente, pues determinó que el proyecto propuesto no tiene un impacto ambiental significativo a pesar de que será construido en etapas. La pretensión del recurrente de que por el mero hecho del proyecto proponerse en etapas requiere una DIA, es una interpretación acomodaticia que no está fundamentada en derecho por lo que carece de méritos.
Así también, el recurrente argumentó que al no existir alcantarillado sanitario en el área, y proponerse medidas alternas para el manejo de aguas usadas, habrá un impacto significativo sobre el ambiente. Según la misiva del 25 de febrero de 2009 de la AAA, el dueño del proyecto deberá consultar a la JCA y a la A.R.P.E. para que determinen el sistema de tratamiento y eliminación final a utilizarse, ya que la AAA no cuenta con las facilidades de alcantarillado sanitario para servir al proyecto. Por su parte, el recurrido estableció que el proyecto tendrá un sistema de inyección por trincheras de infiltración con sistema de tratamiento secundario donde no se propone descargar el efluente a cuerpo de agua alguno, sino que al subsuelo. Las especificaciones de este sistema se prepararon conforme lo establece el Reglamento Número 3 y el Reglamento para el Control de la Inyección Subterránea de la Junta de Calidad Ambiental. Ello lo informó a la JCA y al DRNA en 2008, y posteriormente recibió el endoso. Habiendo las agencias con el peritaje en sistemas para la protección de aguas de Puerto Rico dado su aprobación al proyecto, ello concluye que la EA presentada discute adecuadamente los impactos ambientales de la acción, incluyendo al sistema de inyección para el manejo de las aguas usadas. Por lo cual, las preocupaciones del recurrente fueron debidamente atendidas en el proceso. Por todo lo anterior, no le asiste la razón en su alegación. Otro argumento del recurrente se circunscribe a la poca capacidad de suministro de agua potable en el área. La AAA estableció en su comunicación del 25 de febrero de 2009 que el suministro de agua potable se podrá proveer al crear el "Combinado Naguabo-Vieques-Culebra" y el proponente deberá formar parte del mismo. La AAA indicó además que el Combinado está en proceso de crearse. Por lo tanto, los señalamientos presentados de que no hay suministro de agua potable son totalmente incorrectos e infundados, y la propia carta de la AAA desmiente tal versión. El recurrente adujo que no se ha preparado un estudio sobre el impacto del proyecto en el manglar que ubica en el área y sobre la cercanía del proyecto a la costa y arrecifes. Dicho argumento carece de méritos en la medida que las agencias concernidas utilizando su capacidad técnica evaluaron todos los aspectos y emitieron sus recomendaciones y finalmente sus cartas de endoso. Por lo cual, no incidió la Junta al determinar que todo el proceso ambiental fue adecuado y conforme a la ley.
*1115 El recurrente no nos ha demostrado que exista prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, que nos permita concluir que la actuación de la agencia no fue una razonable. Por ello, entendemos que la enmienda a la consulta de ubicación aprobada por la Junta debe ser sostenida, pues la misma no fue irrazonable, ilegal, ni medió abuso de discreción.
m
Por los fundamentos antes expuestos, se confirma la Resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la señora Secretaria.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones