J. MODESTO BIRD y ANA M. DE BIRD, demandantes y recurridos, *v.* EASTERN AIRLINES, INC., demandada y recurrente.

*Número:* R-70-81    *Resuelto:* 11 de mayo de 1971

*Francisco Ponsa Feliú, Wilson F. Colberg* y *Miguel A. Valldejuli,* abogados de la recurrente; *Reichard & Colberg,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

El día 10 de noviembre de 1966 los esposos J. Modesto Bird y Ana M. de Bird abordaron en San Juan un avión de la Eastern Airlines con destino a Miami. El equipaje que entregaron a la porteadora consistió de dos maletas que contenían efectos personales. Al llegar a Miami sólo una de las maletas les fue entregada. La otra maleta fue enviada por equivocación a Nashville, Tennessee, a pesar de estar debidamente identificadas por sus respectivos boletos. En el aeropuerto de Miami perdieron algún tiempo tratando de localizar la maleta. En Miami gastaron $144.03 en efectos personales, se privaron de algunas diversiones y tuvieron que hacer algunas llamadas telefónicas a la Eastern preguntando si habían localizado la maleta.

La maleta extraviada les fue entregada a su regreso a San Juan el 14 de noviembre, cuatro días después, sin que le faltara nada de su contenido.

Dos meses después los esposos Bird demandaron a la Eastern por daños y perjuicios reclamando los $144.03 que gastaron en Miami en la compra de efectos personales y, además, la suma de $2,750.00 por daños y perjuicios consistentes en la pérdida de tiempo e inconveniencias que padecieron en Miami con motivo del extravío de la maleta.

La Eastern alegó como defensa que si alguna responsabilidad tenía, lo que negaba, la misma estaba sujeta a las limitaciones establecidas por las tarifas en vigor aprobadas por la Junta de Aeronáutica Civil Federal.

El Tribunal Superior declaró con lugar la demanda, condenando a la Eastern a pagarle a los esposos Bird los $144.03 de gastos, $500.00 por sufrimientos morales, más $200.00 por concepto de honorarios de abogado.

Sostuvo el Tribunal Superior que la doctrina del caso de *Firpi* v. *Pan American World Airways, Inc.*, 89 D.P.R. 221 (1963), no es aplicable a este caso. Distinguió el caso de *Firpi* a base de que allí la maleta se perdió mientras que en éste la maleta se extravió temporalmente. Sostuvo el Tribunal:

"La demandada alega que la doctrina del caso de Firpi v. Pan American World Airways . . . es la aplicable a este caso. Sin embargo, el caso de Firpi . . . es distinguible del caso ante nos ya que allí se trataba de una maleta que había perdido el allí demandante, mientras que en este caso los demandantes recobraron la maleta después de una demora de varios días, y solicitan indemnización por los daños pecunarios que incurrieron al verse privados de sus pertenencias y los daños morales acaecidos como consecuencia de dicha pérdida temporera, según lo dispone el Artículo 1054 de nuestro Código Civil, 31 L.P.R.A., 3018. Por lo tanto, el hecho de que en el presente caso la parte demandada incumplió el contrato de transporte al no entregar la maleta a su debido tiempo, le impone la obligación de indemnizar los daños que sufrieran los demandantes, según lo dispone el Artículo 1060 del antes mencionado cuerpo legal, 31 L.P.R.A., 3024."

Acordamos revisar. En *Firpi* v. *Pan American World Airways, Inc.*, supra, reconocimos como norma general, uniformemente sostenida en la jurisprudencia americana en el campo de la transportación aérea interestatal, que las disposiciones o declaraciones contenidas en las tarifas que por ley federal vienen obligadas las líneas aéreas a radicar en la Junta de Aeronáutica Civil, luego de aprobadas por ésta, constituyen parte del contrato de transporte aéreo siendo válidas y obligatorias a las partes contratantes independientemente del conocimiento real que sobre ellas tenga el pasajero o remitente; que corresponde al Poder Judicial decidir sobre el ámbito de aplicación de una regla tarifaria aprobada por la Junta; y que son válidas las disposiciones limitativas de responsabilidad por equipaje perdido incluidos en unas tarifas aprobadas por la Junta de Aeronáutica Civil.

La única diferencia en los hechos entre el caso de *Firpi* y el presente caso es que en *Firpi* la maleta conteniendo joyas valoradas en más de nueve mil dólares se perdió para siempre, mientras que en este caso la maleta se extravió temporalmente y se le entregó al pasajero sin que faltara nada de su contenido. En *Firpi* limitamos, en reconsideración, la responsabilidad de la porteadora por pérdida de la maleta y las valiosas joyas a lo dispuesto en la Regla 18-E(1) de la tarifa de aquella aprobada por la Junta de Aeronáutica Civil. Dicha Regla leía como sigue (*Firpi* v. *Pan American World Airways, Inc.*, supra, a la pág. 222):

"E—(1) Cualquier responsabilidad de la porteadora está limitada a $16.50 (250 francos de oro franceses) o su equivalente por kilogramo en el caso de equipaje registrado u otra propiedad, a menos que con anticipación un valor más alto sea declarado y se paguen cargos adicionales de acuerdo a la tarifa de la porteadora. En tal caso la responsabilidad de la porteadora estará limitada al valor más alto declarado. En ningún caso la responsabilidad de la porteadora excederá a la

pérdida real sufrida por el pasajero. Toda reclamación estará sujeta a la prueba de la cuantía de la pérdida."

La Regla 16C (5) (¹) de la tarifa invocada por la Eastern es prácticamente igual que la del caso de *Firpi* con la diferencia que en la que aquí consideramos, además, establece límites en el caso de equipaje no declarado; se señala el equivalente en moneda canadiense, y se establece la suma de $250.00 americanos y su equivalente en moneda canadiense como límite máximo de responsabilidad en vuelos comprendidos entre San Juan y cualquier punto en los Estados Unidos Continentales.

■ Como hemos visto, el tribunal sentenciador decidió que las reglas tarifarias de la porteadora no eran aplicables al caso de maletas extraviadas y recuperadas luego de una demora y que eran aplicables las disposiciones del Código Civil que imponen responsabilidad por incumplimiento de contratos.

La Regla 16C (5) de la tarifa tiene un alcance más amplio que el que le atribuyó el tribunal sentenciador. (²) Por su

---

(¹) La Regla 16C (5) reza así:

"Any liability of Carrier is limited to $16.50 U.S. Currency or $17.84 Canadian Currency (250 French gold francs) per kilogram in the case of checked baggage, and $330.00 U.S. Currency or $356.77 Canadian Currency (5000 French gold francs) per passenger in the case of unchecked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to Carrier's tariff.

"In that event the liability of Carrier shall be limited to such higher declared value. In no case shall Carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss.

"Exception: For carriage wholly between San Juan, P.R. and a point in the Continental U.S.A. the Carrier's liability under the conditions described above shall not exceed $250.00 U.S. Currency or $270.28 Canadian Currency."

(²) Tan solo parte de las reglas tarifarias vigentes de la porteadora fueron ofrecidas en evidencia, por lo que no sabemos si un caso como el presente es contemplado en el texto de alguna de las reglas tarifarias no ofrecidas en evidencia; nos referimos específicamente a la Regla 16C (11)

propio texto se extiende a *cualquier responsabilidad* (*any liability*) de la porteadora relacionada con equipaje, declarado o no. Y al establecer el límite de responsabilidad dispone que en *ningún caso excederá a la perdida real sufrida* por el pasajero. (*In no case shall the Carrier's liability exceed the actual loss suffered by the passenger.*) Dispone, además, que *toda* reclamación está sujeta a *la prueba de la cuantía de la pérdida.* Resolvemos que dicha Regla es aplicable a los hechos del caso que aquí consideramos. Resta sólo determinar si dentro de la limitación de responsabilidad a *pérdida real sufrida* que se establece en la Regla, procede la concesión de *daños morales* por los sufrimientos y el pago de los desembolsos por efectos personales que se vieron obligados a comprar en Miami, como consecuencia del extravío temporero de la maleta.

■ La frase pérdida *real* sufrida en su acepción popular y corriente denota la existencia verdadera, efectiva, tangible, material, palpable, sustancial de la pérdida refiriéndose ésta a las cosas. (³) Es esa la interpretación que le damos a dicha frase y la que debemos seguir aquí. (⁴)

La base estatutaria del sistema tarifario descansa en la Ley Federal de Aviación del 1958 (⁵) (Federal Aviation Act of 1958). Uno de los propósitos principales de esta legisla-

---

que no fue ofrecida en evidencia y que cita la demandada en su alegato.

"Rule 16 (C) (11)—Carrier shall not be liable in any event for any consequential or special damage arising from carriage subject to this tariff, whether or not Carrier had knowledge that such damage might be incurred."

(³) La regla tarifaria utiliza la frase *"actual loss suffered".* Con relación al significado de real o "actual", véanse *Diccionario General Ilustrado Vox,* Segunda Edición, pág. 1422; *The Synonym Finder,* J. I. Rodale, Rodale Books, Inc., Sexta Edición, pág. 15.

(⁴) Art. 15 del Código Civil, 31 L.P.R.A. sec. 15:

"Las palabras de una ley deben ser generalmente entendidas en su más corriente y usual significación, sin atender demasiado al rigor de las reglas gramaticales, sino al uso general y popular de las voces."

(⁵) 72 Stat. 731, 49 U.S.C.A. § 1301 *et seq.*

ción y de la Ley de Aeronáutica Civil que le precedió fue establecer un sistema unificado nacional que asegurara uniformidad de tratamiento, en precio y servicios, para todas las personas que utilizaran la transportación aérea, quedando restringida sustancialmente la intervención de los estados en esta área. *Lichten* v. *Eastern Airlines, Inc.*, 189 F.2d 939 (2d Cir. 1951); 29 A.L.R.2d 1337; Pratt, *Tariff Limitations on Air Carriage Contracts*, 29 J. Air L. & Com. 14, 18–22 (1963); De Forest Billyou, *Air Law* (Second Ed., 1964), págs. 119–123. Ver, *Liability of Air Carrier for Loss of or Damage to Passengers' Baggage or Contents Thereof*, 25 A.L.R.2d 1352 (1952); *Limitations of Liability: Passenger Injuries and Baggage Losses on Land, Sea and Air*, 34 Tul. L. Rev. 354 (1960).

■ Teniendo en cuenta el propósito que anima dicho sistema no podemos convenir que el daño moral, consistente en las molestias sufridas por los esposos recurridos en tratar de localizar la maleta, constituya una *pérdida real* recobrable bajo la Regla 16C(5) del contrato de transporte. El estado actual de nuestra jurisprudencia tampoco reconoce la procedencia de una indemnización por daño moral bajo las circunstancias que revela la prueba en este caso: gestiones en tratar de localizar la maleta; incomodidad; privarse de algunas diversiones; y hacer tres o cuatro llamadas telefónicas a la porteadora. Éste no es el tipo de estado emocional que merezca reconocerse como compensable. *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 83 (1967).

■ Resta sólo determinar la procedencia de la reclamación por los gastos de los recurridos en Miami en compra de algunos efectos personales como consecuencia del extravío temporero de la maleta.

Los gastos ascendieron a $144.03. La maleta la recobraron cuatro días después; no le faltaba nada. La concesión de esta partida era claramente improcedente. Constituye, en

efecto, el cumplimiento por segunda vez de la obligación de entregar: una, la entrega de la maleta con los efectos personales; y la otra, el pago del equivalente en dinero de esos mismos efectos.([6])

*La sentencia recurrida se dejará sin efecto y se dictará otra declarando sin lugar la demanda.*

El Juez Asociado Señor Hernández Matos no intervino.

---

([6]) Aunque no hemos formado juicio sobre ello, se nos ocurre que quizás la compensación podría calcularse basada en el interés legal de la inversión forzada durante cuatro días.