JORGE MATOS RODRÍGUEZ, MIGUEL A. MATOS RODRÍGUEZ y MARÍA RODRÍGUEZ COLÓN VDA. DE MATOS, demandantes y peticionarios, *v.* EASTERN AIRLINES, INC., demandada y recurrida.

*Número:* O-78-240     *Resuelto:* 28 de diciembre de 1978

*J. E. Santiago Rosado,* abogado de los peticionarios; *Francisco Ponsa Flores, Francisco Ponsa Feliú, Edda Ponsa Flores* y *Lawrence E. Duffy,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El 23 de mayo de 1972, mediante el pago de la suma de $87.88, la Funeraria Frank Jones Funeral Home, Inc., contrató con la Eastern Airlines, Inc., la transportación y traslado de un ataúd sellado conteniendo los restos de Jorge Matos Forti desde Philadelphia, Pennsylvania a San Juan, Puerto

Rico. (¹) Junto con el ataúd se entregó a la línea aérea la correspondiente documentación, certificado de defunción y el permiso de traslado del mismo. Al arribar el avión a Puerto Rico, por habérseles perdido, los empleados o agentes de la Eastern Airlines, Inc., no pudieron suministrar a la consignataria, Funeraria Rodríguez Osorio, los documentos aludidos, necesarios según las leyes y reglamentos de sanidad del estado de Maryland, Pennsylvania, y del Estado Libre Asociado de Puerto Rico para todo traslado y eventual enterramiento de un cadáver en Puerto Rico. La funeraria consignataria se negó a aceptarlo. Por esta razón el ataúd y los restos permanecieron en la sección de carga de la línea aérea hasta horas de la noche del día siguiente en que fueron llevados al Instituto de Medicina Legal donde estuvieron hasta el 28 de mayo de 1972, fecha en que se verificó el entierro por haber la funeraria recibido los documentos extraviados.

A base de estos hechos, los hijos y la viuda de Matos Forti radicaron demanda contra Eastern Airlines, Inc., reclamando compensación por angustias y sufrimientos mentales. La demandada contestó admitiendo ser una corporación extranjera autorizada a realizar negocios en Puerto Rico, y que el 23 de mayo de 1972, aceptó como carga para transportar de Philadelphia a San Juan el cadáver. Negó las restantes alegaciones y como defensa afirmativa expuso que su responsabilidad bajo el contrato de transportación de carga suscrito estaba limitada a lo dispuesto en la Tarifa de Carga Aérea CR-3, C.A.B. No. 193, radicado ante la Junta de Aeronáutica Civil de los Estados Unidos. (²)

---

(¹) Las partes aceptan que la línea aérea convino y recibió el cadáver para *transportarlo como carga aérea;* y que a esos efectos expidió un "conduce de carga aérea" (*air freight domestic airbill*).

(²) Posteriormente la demandada radicó una Moción de Sentencia Sumaria basada en este mismo fundamento y que fue declarada sin lugar. Así las cosas, luego de utilizados los métodos de descubrimiento de prueba, se celebró una conferencia preliminar entre abogados, que produjo un informe en el cual se estipulaban los hechos cruciales y solicitaban del tribunal re-

Oportunamente, la sala de instancia emitió resolución interlocutoria concluyendo que al caso de autos aplicaban—a los fines de limitar la responsabilidad de la Eastern Airlines, Inc.—los certificados que ésta radicó ante la Junta de Aeronáutica Civil.

A solicitud de los demandantes expedimos *certiorari.* Como teoría exponen que el tribunal a quo debió aplicar las normas estatuidas en nuestro Código Civil sobre responsabilidad cuando se causa daño mediando culpa o negligencia, aduciendo que esta controversia es distinguible de las que regularmente se suscitan bajo las referidas reglas tarifarias, pues: (1) los demandantes no fueron parte en el contrato de transportación; (2) no se trata de la transportación de un objeto de carga común y corriente que se puede valorar; (3) el cadáver no se perdió, ni resultó mutilado; y (4) que los daños reclamados surgieron por el extravío temporal de los documentos exigidos por los estatutos de sanidad para el traslado y enterramiento del cadáver.

Es menester dejar constancia de que aun el respeto y simpatía natural que como seres humanos investidos de la toga judicial genera en nuestro ánimo hacia los peticionarios deudos del fallecido controversias de esta índole, no nos corresponde evaluar y explorar las interrogantes de la metafísica sobre la naturaleza o valor de un cuerpo humano ya fallecido. Nuestra experiencia y sensibilidad nos mueve a reconocer que los restos de un ser querido son de gran estima y valía para sus familiares, independientemente del proceso degenerativo que materialmente se inicia al sobrevenir la muerte. No obstante, la objetividad y ecuanimidad imperante en el foro judi-

---

solviese antes de la vista la siguiente controversia: "Si el derecho aplicable a los hechos del presente caso son las disposiciones del Art. 1802 del Código Civil de Puerto Rico y las disposiciones de las Secs. 1101; 1110; 1301 y 1302 del Título 24 de L.P.R.A. y las Secs. 350-4593; 350-4594 y 350-4592 del Volumen 10 de Reglas y Reglamentos de Puerto Rico o las disposiciones de las Reglas Tarifarias radicadas por la Eastern Airlines, Inc., ante la Junta Nacional de Aeronáutica Civil."

cial exige la solución de la controversia con abstracción de estos sentimientos.

Hecha esta observación, examinemos los argumentos de las partes. Primeramente, la alegación de que ellos no fueron parte en el contrato de transportación suscrito es inmeritoria. De los hechos estipulados es razonable deducir y concluir, que si bien quien contrató directamente el traslado aéreo del cadáver con la línea aérea fue Frank Jones Funeral Homes, Inc., de Glassboro, New Jersey, ésta lo hizo por encomienda de Funeraria Rodríguez Osorio en quienes, según reza la demanda, "los demandantes habían delegado los Servicios de Funeral de este occiso." Estos, en última instancia, eran las personas naturales interesadas, habiendo las funerarias aludidas actuado simplemente como sus agentes.

Aclarado este extremo, evaluemos conjuntamente los restantes planteamientos, los cuales como denominador común intentan excluir la acción del ámbito de la norma limitativa de la Tarifa de la demandada Eastern Airlines, Inc.

■ En el campo de la regulación aeronáutica expusimos en *Firpi* v. *Pan American World Airways, Inc.*, 89 D.P.R. 197, 208 (1963): "La Ley de Aeronáutica Civil requiere que todo porteador radique ante la Junta de Aeronáutica Civil y mantenga abiertas a inspección pública tarifas conteniendo los precios, cargos y, hasta donde lo requiera la reglamentación de la Junta, que contengan toda clasificación, reglas, reglamentos, prácticas y servicios en conexión con la transportación. 49 U.S.C.A. sec. 1373." Por disposición expresa, esta ley federal es aplicable a Puerto Rico. 49 U.S.C.A. sec. 1301(21) y (29). Luego de ser aprobadas por la Junta, tales tarifas suplantan el derecho local y estatal,(3)

---

(3) La razón básica sostenida reiteradamente por los foros judiciales para que la ley federal ocupe todo el campo es la necesidad de que las reglas de transportación interestatal sean uniformes. *Alco-Gravure Division of Publications* v. *American Airlines, Inc.*, 173 F.Supp. 752 (1959); *Killian* v. *Frontier Airlines,* 150 F.Supp. 17 (1957); *Lichten* v. *Eastern Airlines, Inc.*, 189 F.2d 939 (1951).

y forman parte integral del contrato de transporte aéreo, siendo obligatorias para ambas partes contratantes independientemente del conocimiento que sobre las mismas tenga el remitente o el pasajero. *Firpi,* supra, 208; *Bird* v. *Eastern Airlines, Inc.,* 99 D.P.R. 955 (1971). Esta doctrina continúa vigente según lo evidencian subsiguientes pronunciamientos judiciales y comentaristas: *Blair* v. *Delta Air Lines, Inc.,* 344 F.Supp. 360 (1972), *aff'd* 477 F.2d 564 (1973); *Illinois Produce International, Inc.* v. *Reliance Ins. Co.,* 388 F.Supp. 29 (1975); *North American Philips* v. *Emery Air Freight,* 432 F.Supp. 519, 522 (1977); Fixel, *The Law of Aviation,* Sec. 282, 352–363, Fourth Edition (1967); 8 Am. Jur. 2d, *Aviation,* Sec. 46, 664–666; Comment: *From Preferred Carrier to Common Carrier: Changes in the Liability Rules for Lost, Damaged, or Delayed Freight,* 43 J. Air L. & Com. 413, 420 (1977). La doctrina está tan arraigada que en ocasiones se ha dicho que las tarifas no representan un simple contrato, sino "Ley". *Blair* v. *Delta Air Lines, Inc.,* supra.

En el caso de autos, la tesis de la demandada Eastern Airlines, Inc., se fundamenta en la norma de responsabilidad consagrada en la tarifa de carga aérea CR-3, C.A.B. No. 193, (⁴) radicada y adoptada por la Junta de Aeronáutica

---

(⁴) La norma de responsabilidad invocada es la Regla 15 de la Tarifa que dispone:

"Regla 15. *Limitación de Responsabilidad*

.    .    .    .    .    .    .    .

(B) El Transportador no se hace responsable por cualquier daño proveniente, directa o indirectamente, del cumplimiento de las leyes, reglamentos, ordenanzas o requisitos gubernamentales o de cualquier causa ajena a la voluntad del Transportador.

(C) Habiéndose computado los cargos por el transportador a base del valor declarado por el remitente, queda convenido que *cualquier responsabilidad en ningún caso excederá del valor declarado por el remitente* según se indica en el anverso de la guía aérea y *que la responsabilidad del Transportador, en defecto de tal declaración por el remitente, no excederá 250 francos de oro franceses, o su equivalente, por kilogramo de carga,* destruida, perdida, dañada o *demorada;* toda reclamación deberá someterse con un comprobante del valor de la mercancía.

Civil, vigente al momento de los hechos, y la cual formó parte integral del contrato suscrito. En su apoyo nos señala los siguientes factores: 1) que la demandada aceptó el cadáver para transportarlo como carga; 2) que la Regla 6(E)(2) de la referida Tarifa regula específicamente la aceptación de cadáveres para ser transportados como carga; y 3) que a pesar de que aquí su acto negligente consistió en el extravío de los documentos concernientes al cadáver, y no en el descuido físico de la referida carga, la Tarifa en su Regla 2(A)(2) provee que la misma es aplicable a ". . . la transportación de carga incluyendo todos los servicios incidentales que tenga que realizar el porteador . . .".

Fallamos que tiene razón. Los restos de Matos Forti fueron transportados como carga según lo disponía el propio contrato suscrito, del cual formaba parte integral la Tarifa CR-3, C.A.B. No. 193, y por tanto todas las reclamaciones que surgieran referente a tal gestión eran compensables a la luz de lo prescrito en dicha tarifa. Su ámbito reglamenta específi-

---

.    .    .    .    .    .    .    .

(J) Se aceptarán embarques de mercancía perecedera o propensa a deteriorarse debido a cambios de clima, temperatura, altitud o a cualquier otro riesgo ordinario o a causa del período de tiempo que esté en tránsito, sin que el Transportador asuma responsabilidad alguna por la pérdida o daños que resulten de dicho deterioro o de su condición de perecedera.

(K) El Transportador no será responsable en ningún caso por daños especiales que surjan a consecuencia del transporte cubierto por este reglamento tarifario, independientemente de que el Transportador tenga o no conocimiento de que dichos daños puedan producirse." (Traducción y énfasis nuestros.)

Disposiciones similares son comunes y su validez es la regla mayoritaria sostenida por los tribunales; *Firpi*, supra, 209; *Milhizer* v. *Riddle Airlines, Inc.*, 185 F.Supp. 110 (1960), *aff'd* 289 F.2d 933 (1961); *Blair* v. *Delta Air Lines, Inc.*, supra; *Consequential and Special Damages: Tempest in the Tariff*, 40 J. Air L. & Com. 704 (1974); *Fixel*, supra, 351-352; la regla minoritaria está expuesta en *Odom* v. *Pacific Northern Airlines, Inc.*, 393 P.2d 112 (1964).

Cabe aclarar, que la Junta de Aeronáutica Civil, mediante orden 76-3-139 de 22 de marzo de 1976 (C.A.B. Núm. 19,993) varió su posición anterior por irrazonable, imponiendo responsabilidad absoluta a las líneas aéreas, sujeto a los nuevos límites tarifarios.

camente la transportación física de cadáveres y provee una norma de responsabilidad general para juzgar y evaluar las actuaciones negligentes de la línea aérea en la transportación de carga. El documento no hace distinción entre los distintos tipos de carga para propósitos de responsabilidad del porteador aéreo.

Esta conclusión no queda alterada por la variante fáctica de que la actuación negligente consistió en el extravío de los documentos que acompañaban el cadáver, y no por la conducción física deficiente del ataúd que contenía los restos de Matos Forti.(5) La propia tarifa consigna en la Regla 2(A)(2) que sus disposiciones son aplicables inclusive, *a todos los servicios incidentales que tenga que realizar el porteador* relacionados con la gestión de transporte. No es necesario mucho esfuerzo mental para concluir que la entrega de la documentación referente a la carga—extraviada en este caso—obviamente es un servicio incidental de los contemplados en el anterior lenguaje. Ello causó una *demora*, circunstancia que hemos visto está comprendida y es susceptible de ser compensada aunque sujeta a las limitaciones de la Regla 15 antes citada.

---

(5) Es escasa la jurisprudencia norteamericana consultada que versa sobre daños reclamados a un porteador aéreo por la transportación negligente de restos humanos. En *Milhizer* v. *Riddle Airlines, Inc.*, supra, la línea aérea demandada transportaba un féretro desde Florida a Michigan, y el avión se estrelló en Georgia resultando el cadáver mutilado. Los familiares demandaron reclamando daños morales y expusieron que no se debía aplicar la limitación tarifaria cuando lo que era objeto de transportación eran los restos de un persona, ya que ello iría en contra de la política pública. La contención no prosperó y el tribunal aplicó las disposiciones tarifarias. En *Blair* v. *Delta Air Lines, Inc.*, supra, se contrató a la línea aérea demandada para la transportación del cadáver de la esposa del demandante desde Miami a Mississippi. Por la negligencia de la demandada al cargar y descargar el féretro, éste sufrió daños por la lluvia. Por tales hechos el demandante radicó acción contra el referido porteador aéreo reclamando daños morales y el tribunal al resolver la controversia aplicó la tarifa de **carga aérea pertinente.**

*En virtud de lo expuesto, se dictará sentencia anulando el auto de certiorari y devolviendo el caso para procedimientos ulteriores consistentes con lo resuelto.*

El Juez Asociado Señor Martín concurre en el resultado sin opinión.