La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Nuevamente debemos interpretar el alcance de las en-miendas al plan de cesantía implementado por la Ley Núm. 7 de 9 de marzo de 2009, mejor conocida como Ley Especial Declarando Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Cré-dito de Puerto Rico (la Ley 7). En particular, nos corres-ponde examinar si erró el Tribunal de Apelaciones al resolver que el Tribunal de Primera Instancia actuó sin jurisdicción cuando concluyó que las peticionarias estaban excluidas del plan de cesantía, en razón de pertenecer al personal del Registro de la Propiedad de Puerto Rico.
*814 I
El 22 de octubre de 2009 Madeline Sánchez Díaz, junto a otras dos empleadas del Registro de la Propiedad, Lucila Flores Rivera e Ivette López Ortiz, instó una acción civil para solicitar un injunction preliminar contra el Estado Libre Asociado de Puerto Rico (E.L.A.) en razón de haber sido cesanteada de su puesto en virtud de la Ley 7. La parte demandante reclamó que no procedía su cesantía, ya que la Ley Núm. 37 de 10 de julio de 2009 había enmen-dado el Artículo 37.02 de la Ley 7 a los efectos de excluir el personal del Registro de la Propiedad del plan de cesantía. El E.L.A. adujo que dicha disposición no resguardaba el empleo de la señora Sánchez Díaz debido a que su clasifi-cación de empleo, Técnico de Sistemas de Oficina I, no era esencial. También levantó como defensa que el foro prima-rio carecía de jurisdicción para adjudicar la controversia porque la Ley 7 le confirió jurisdicción exclusiva a la Comi-sión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (la CASARH) para atender cualquier asunto relacionado a las cesantías.
Finalizadas las vistas, el Tribunal de Primera Instancia emitió, el 30 de octubre de 2009, una sentencia parcial en la cual decretó que las actuaciones de la parte demandada fueron ultra vires y, por lo tanto, las cartas de cesantía notificadas a las demandantes eran nulas e inoficiosas. La juzgadora del foro primario razonó que, por tratarse de un asunto de estricta interpretación del derecho, la adjudica-ción de dicho asunto no requería la pericia de la agencia administrativa. También concluyó que los miembros del personal del Registro de la Propiedad fueron incluidos de forma expresa en la lista de empleados exentos del proceso de cesantía del Artículo 37.02 de la Ley 7, según enmendada.
*815 Inconforme, el E.L.A. presentó ante el Tribunal de Ape-laciones un recurso de apelación en el cual señaló que el foro primario había errado al asumir jurisdicción sobre el caso cuando le correspondía atenderlo exclusivamente a la CASARH, y al concluir que todo el personal del Registro de la Propiedad estaba excluido de la aplicación de la Ley 7. El 13 de noviembre de 2009 el foro apelativo revocó la sen-tencia parcial del foro primario y desestimó la demanda presentada. Concluyó que el pleito versaba sobre el princi-pio de mérito y que la Ley 7 le confería a la CASARH ju-risdicción primaria exclusiva sobre los asuntos de los em-pleados públicos cesanteados a tenor de dicho estatuto.
Posteriormente, la señora Sánchez Díaz presentó ante este Tribunal una petición de certiorari solicitando que se revocara el dictamen del foro apelativo. Adujo que este erró al: (a) determinar que el Tribunal de Primera Instancia carecía de jurisdicción para atender los despidos decreta-dos por la Ley 7 en casos donde la controversia se limita a un asunto de estricta interpretación estatutaria sobre la exclusión de ciertos grupos; (b) determinar que el Tribunal de Primera Instancia carecía de jurisdicción para entender en los despidos decretados bajo la Ley 7 cuando se han alegado violaciones específicas a derechos constitucionales; (c) determinar que el pleito versaba sobre el principio de mérito; (d) determinar que no procedía un injunction pre-liminar, y (e) determinar que las peticionarias no estaban expresamente excluidas del plan de cesantía bajo la Ley 7, en contravención a la propia letra e intención legislativa de dicho estatuto.
Coetáneamente con la presentación de su demanda ante el foro primario, y bajo el mismo fundamento sobre la ex-clusión del personal del Registro de la Propiedad, la señora Sánchez Díaz presentó una apelación ante la CASARH para impugnar su cesantía. Luego de varios trámites pro-cesales, el 24 de marzo de 2010 la CASARH emitió una resolución en la cual declaró “no ha lugar” a la apelación *816 presentada.(1) Más tarde, el 18 de noviembre de 2010, el E.L.A. presentó ante este Tribunal una moción de desesti-mación de la reclamación instada por la peticionaria Sán-chez Díaz. En esa instancia alegó que por concurrir identi-dad entre la cosa, causa y partes de este reclamo, junto con que la determinación administrativa advino final y firme, se debe aplicar la doctrina de cosa juzgada.
De forma paralela a la señora Sánchez Díaz, Humberto Martínez Ortiz, junto a otros 24 empleados del Registro de la Propiedad, presentó ante el Tribunal de Primera Instan-cia una demanda similar contra el E.L.A. solicitando los mismos remedios que en la primera demanda, de acuerdo con las enmiendas al Artículo 37.02 de la Ley 7. El foro primario emitió una sentencia el 26 de octubre de 2009, en la cual dictaminó que la CASARH era el foro con jurisdic-ción exclusiva para atender cualquier asunto surgido de la impugnación de la Ley 7, no limitándose a la impugnación de las cesantías sino con referencia a todos los derechos de los empleados afectados por ella. De esta forma, el foro primario desestimó la demanda por falta de jurisdicción y refirió a los demandantes al foro pertinente, es decir, la CASARH.
Inconformes, los demandantes presentaron una petición de certiorari ante el Tribunal de Apelaciones y plantearon unos señalamientos de error similares a los del primer caso ante nuestra consideración. El foro apelativo confirmó el dictamen del Tribunal de Primera Instancia y la parte de-mandante procedió a presentar un recurso de apelación civil ante este Tribunal.
El 4 de junio de 2010 este Tribunal emitió una resolu-ción en la cual se consolidó el caso del señor Martínez Ortiz, y otros empleados, con el de la señora Sánchez Díaz por *817 versar ambos pleitos sobre la misma controversia(2) Sin embargo, luego de varias conversaciones transaccionales encaminadas a finiquitar las controversias, el 13 de sep-tiembre de 2010 el señor Martínez Ortiz y otros deman-dantes del segundo caso presentaron ante este Tribunal una moción de desistimiento con perjuicio y la renuncia a la representación legal en su caso. La única demandante que permaneció en esa acción civil, ya que no aceptó las condiciones y los términos propuestos en el acuerdo tran-saccional, fue la señora Anca Santiago.
Nuevamente, el 15 de octubre de 2010 emitimos una Resolución en la cual concedimos a la señora Sánchez Díaz un término de 30 días para presentar su alegato, so pena de desestimación; mientras que a la señora Anca Santiago concedimos un término similar para informar su nueva re-presentación legal. Al día de hoy solamente la señora Sán-chez Díaz ha cumplido con nuestros requerimientos, ya que presentó oportunamente una moción informativa aco-giéndose a la Regla 33(k) de nuestro Reglamento.(3) Sin embargo, esta presentó posteriormente ante este Tribunal una moción informativa sobre desistimiento por acuerdo transaccional, cuyo efecto fixe finiquitar la causa de acción presentada por ella, mas no la de las dos peticionarias restantes.(4)
*818 Examinados los casos consolidados y contando con la comparecencia de la parte demandada, procedemos a resolver.
II
Concretamente, la Ley 7 establece, entre otros asuntos, un plan de emergencia de reducción de gastos por parte del Gobierno del Estado Libre Asociado de Puerto Rico. Mediante el Artículo 37 se instituyó la segunda fase del plan de reducción de gastos, la cual conllevó cesantías involuntarias para la eliminación de puestos. Esta fase sería aplicable, con determinadas excepciones, a todas las agencias de la Rama Ejecutiva del Gobierno.(5)
Más allá de la aplicabilidad del plan de cesantía, la Ley 7 también dispuso, en su Artículo 37.02, ciertas ex-cepciones a dicho plan para minimizar el impacto negativo a los servicios brindados por el Gobierno en las áreas relacionadas con la protección de la seguridad, enseñanza, salud y bienestar. El Artículo 37.02 inicialmente mencionaba un número limitado de puestos exentos de las referidas cesantías involuntarias.(6) Luego, el 19 de junio de 2009, las Comisiones de Hacienda y Gobierno de la Cámara de Representantes de Puerto Rico presentaron ante dicho cuerpo legislativo el Informe Positivo sobre el P. de la C. *819 1640. En ese Informe ambos cuerpos realizaron una ex-tensa evaluación de la Ley 7 y presentaron “una serie de enmiendas adicionales a la medida con el fin de promover el desarrollo económico y proteger ciertos empleos en el sector público de alta importancia para el servicio de la ciudadanía”. (Enfasis nuestro.)(7) Acto seguido, el 10 de ju-lio de 2009 se aprobó la Ley Núm. 37 para enmendar el Artículo 37.02 para ampliar la lista de los puestos exentos del plan de cesantías involuntarias. La nueva ley adicionó, entre otros, al personal del Registro de la Propiedad de Puerto Rico.(8)
Hemos atendido recientemente otras controversias rela-cionadas a los grupos de empleados que están exceptuados del plan de cesantía de la Ley 7. En Negrón Matos et al. v. *820 E.L.A., 179 D.P.R. 217 (2010), decidimos que la parte de-mandante, compuesta por diversos empleados de la Admi-nistración de Instituciones Juveniles (A.I.J.), no estaba ex-cluida del plan de cesantía. En aquella instancia los peticionarios argumentaron que la A.I.J., como agencia, quedó excluida de la Fase II, ya que el Artículo 37.02(b) incluía a “oficiales de corrección y oficiales juveniles”. Este Tribunal dictaminó que, en aras de proteger ciertos em-pleos en el sector público de alta importancia para el ser-vicio de la ciudadanía, la citada disposición de la Ley 7, según enmendada, solo excluía a ciertos empleados a base de sus clasificaciones, y no a la agencia por completo.
Luego, en Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231 (2010), confirmamos el ratio deNegrón Matos al concluir que los demandantes sí estaban excluidos del plan de cesantía, no por ser empleados del Instituto de Ciencias Forenses, sino en razón de llevar a cabo funciones técnicas y de peritaje expresamente excluidas por el Artículo 37.02. Esto, conforme al historial legislativo del estatuto que re-vela, en parte, que “el legislador entendió necesario aumentar las exenciones a ciertos puestos que son esenciales para el funcionamiento de nuestro sistema de gobierno”.(9) De esta forma, reconocimos en dicha ocasión que al enmendar el Artículo 37.02 “el legislador salvaguardó los servicios esenciales del Gobierno, ya sea mediante exclusión estatutaria expresa o mediante la determinación que haga la J.R.E.F. sobre otros empleados no excluidos expresamente en la referida disposición”.(10)
También atendimos en Báez Rodríguez lo referente a la jurisdicción delegada a la CASARH. Aclaramos que la Ley 7 sólo sustrajo de la jurisdicción ordinaria de los tribunales de justicia aquellas controversias relacionadas a la antigüedad en sus empleos de los empleados sanciona- *821 dos, y dispusimos que cuando la controversia planteada no se relacione estrictamente a esta causa de impugnación, los tribunales de justica tendrán autoridad para ejercer su facultad jurisdiccional.(11) Ello nos permite resolver, de en-trada, que las peticionarias tienen razón al alegar que el foro apelativo no debió negarle jurisdicción al Tribunal de Primera Instancia para atender su reclamo de exención estatutaria. Este caso no versa sobre el principio de mérito, como tampoco está en controversia el cómputo de la anti-güedad en el empleo de la señora Sánchez Díaz. Aquí es claro que la parte demandante impugna su cesantía basán-dose única y exclusivamente en que la letra del Artículo 37.02(Z) resguarda expresamente su puesto de los efectos de la Fase II de la Ley 7.(12)
III
Ahora bien, ya dispuestas las controversias anteriores, procedemos a atender los demás errores alegados, todos los cuales se refieren al significado del texto legislativo sobre la exclusión del personal del Registro de la Propiedad de los efectos de la Ley 7.
En nuestra jurisdicción las normas básicas de interpretación gozan de rango estatutario. El Artículo 14 del Código Civil de Puerto Rico dirige al juzgador a no menospreciar la letra de la ley, bajo el pretexto de cumplir con su espíritu, cuando esta es clara y libre de toda ambigüedad. (13) También por mandato estatutario nos vemos obligados a entender el lenguaje de una ley en su “más corriente y usual significación” atendiendo con prioridad el *822 uso general y popular de las voces, ya que se presume que el legislador ha utilizado las palabras en su acepción común(14) Por lo tanto, y como ejercicio de autodisciplina judicial, el tribunal no puede añadir o eliminar condiciones en una ley que no surgen de su redacción. A su vez, esto requiere de los tribunales de justicia el mayor grado de disciplina al aplicar una ley, para evitar sustituir el criterio del legislador por convicciones o creencias que pueda tener el juez(15)
Igualmente hemos señalado, como norma general, que para interpretar correctamente una ley es necesario estudiarla y analizarla como un íntegro, ya que la lectura aislada y desconectada de porciones de una ley podría dar lugar a confusión(16) Resulta, pues, necesario que en nuestra labor interpretativa armonicemos, hasta donde sea posible, todas las disposiciones de una ley con el propósito de lograr auscultar integrada, lógica y razonablemente la intención legislativa. Todo ello sin olvidar que las reglas de interpretación no son más que guías que ayudan al juzgador a esclarecer los fines del estatuto y no pueden utilizarse si el resultado contravendría la intención del legislador(17)
Si bien es cierto que en Negrón Matos decidimos que ni el texto original, ni el enmendado, del Artículo 37.02 con-sideró excluir a todos los empleados de la agencia concer-nida, y que en Báez Rodríguez enfatizamos la protección estatutaria a los puestos que realizan funciones esenciales, no es menos cierto que en aquellas instancias interpreta- *823 mos dos incisos que claramente excluían de los efectos del plan de cesantía unos puestos técnicos en particular(18) Sin embargo, en el caso ante nuestra consideración debemos analizar un lenguaje de exclusión muy distinto.
En cuanto a los empleados exentos en el texto original de la Ley 7, el Artículo 37.02 se refería, en sus incisos (a), (b), (c), (d), (e), (f), (g) y (h), a empleos o cargos concretos y específicos.(19) Al enmendar ese artículo y aumentar el nú-mero de empleos excluidos del plan de cesantía, la Ley 37 añadió empleos concretos a las disposiciones existentes bajo la Ley 7 pero también creó nuevos incisos para incluir empleos que son prescritos de forma general. Entre estos se encuentran los incisos (j), (k), (1) y (m) del Artículo 37.02 que incluyen: “[e]mpleados de la Comisión de Relaciones del Trabajo de Servicios Públicos y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público”, “\p]ersonal de la Oficina de Servicios con Antelación al Juicio”, “\p]ersonal del Registro de la Propie-dad” y “\p]ersonal de la Junta de Libertad Bajo Palabra”.
En su moción en oposición a la petición de certiorari, el E.L.A. argumentó que el Artículo 34 de la Ley 7, según enmendada, es la disposición que rige sobre la aplicabili-dad de dicha ley y que ésta no exime de los efectos del plan de cesantía al Departamento de Justicia, que es la agencia a la cual está adscrito el Registro de la Propiedad. De esta *824 forma la parte demandada resalta que el Artículo 32.07 debe ser interpretado conjuntamente con el Artículo 34. Señala, además, que al haber discrepancia en el lenguaje del Artículo 37.02, lo que corresponde es que la J.R.E.F. determine cuáles empleados quedarán, en efecto, exentos de la Fase II de la Ley 7.(20)
Concretamente, nos encontramos ante una situación donde el término “personal” se contrapone al propio lenguaje del Artículo 37.02 que excluye a “los empleados de las Agencias que según sus clasificaciones llevan a cabo funciones esenciales”. Para propósitos de la interpretación judicial, y ante situaciones como la presente, este Tribunal ha expresado que la literalidad de una ley solo puede ser ignorada cuando esta es claramente contraria a la verdadera intención o propósito legislativo. Es entonces cuando debemos consultar el historial del estatuto a interpretarse, sin olvidar que “[l]a exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición [sic] al texto de ésta, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo”.(21) Si la función de las enmiendas de la Ley 37 era esclarecer la intención legislativa de la Ley 7, nos corresponde como máximo foro realizar un ejercicio de hermenéutica para descifrarla. En esta instancia lo que corresponde es penetrar la superficie verbal del problema, precisar el diseño y la razón de ser de las disposiciones legales involucradas y sopesar los intereses en juego, para intentar acercamos a la interpretación más justiciera.(22)
Comenzamos, pues, por auscultar el significado *825 del vocablo “personal” incluido en el Artículo 37.02(Z). En primer lugar, encontramos que el término “personal” no está definido en el texto de la Ley 7 ni en su historial legislativo. Cuando un estatuto no contiene una definición del vocablo en controversia la palabra debe entenderse en el sentido ordinario y usual que se le adscribe, tomando en consideración que “la interpretación judicial debe hacerse con fines socialmente útiles”.(23) Así las cosas, no podemos negar que el término “personal” es amplio y abarcador. Este se define de forma general como el “[c]onjunto de las personas que trabajan en un sitio”,(24) o como el “[cjonjunto de las personas que pertenecen a determinada clase, corpo-ración o dependencia. Empleados”. (Enfasis nuestro.)(25) A su vez, y desde una perspectiva económica y administra-tiva, se refiere a un “[n] ombre genérico que se utiliza para designar el factor trabajo de una empresa o conjunto de empleados de la misma, cualquiera que sea su grado de cuálificación profesional, si bien se ha hecho clásica su cla-sificación en tres niveles o grupos: asalariados, mandos in-termedios y ejecutivos o directivos”. (Enfasis nuestro y en el original.)(26) También desde el punto de vista laboral se ha definido de una forma similar, es decir: “[t]he working force or body of persons employed by an organization, firm *826 or individual. The term ...is synonymous with employees, staff, and workers.” (Énfasis nuestro.)(27)
Hemos de notar que si adoptamos cualquiera de estas definiciones del término “personal”, en su sentido común y corriente, y hasta técnico, se colige que el estatuto prescribe la exención del plan de cesantía a la totalidad de la fuerza laboral empleada en el Registro de la Propiedad. No obstante, y debido a la incongruencia lingüística del Artí-culo 37.02, debemos remitirnos al historial legislativo. De este se desprenden las expresiones siguientes:
Sra. González Colón: “Y a mí me parece importante excluir también el programa de Registro de la Propiedad, esos técni-cos que están entrando las notas y los documentos del registro de la propiedad, porque el registro de la propiedad, si estuviera al día y no tuviéramos los más de 658 mil documentos sin registrar, estuviera generando entre 200 y 350 millones de dó-lares al año, nuevo, limpio, que estarían en el Fondo General. Pero como no se le asigna el dinero para utilizar la tecnología y no se le asignan las manos para poder trabajar con esos casos seguimos perdiendo anualmente esa misma cantidad, y por eso estamos excluyéndolo de la Ley 7”. (Énfasis nuestro.)(28)
Aunque la expresión de la Presidenta cameral alude a aquellos “técnicos que están entrando las notas”, lo cual, tomado aisladamente, se podría interpretar como indicio de que la enmienda buscaba excluir solamente a ese personal técnico, debemos notar el reconocimiento del atraso en la inscripción y la carencia de mano de obra en las la-bores del Registro de la Propiedad, lo cual fortalece el ar-gumento de que la exclusión se refiere al programa en su totalidad.
Abona a nuestro entendimiento de la intención legisla-tiva la posterior aprobación de la Ley Núm. 216 de 27 de diciembre de 2010, mejor conocida como Ley para Agilizar el Registro de la Propiedad, la cual reconoció un atraso de *827 600,000 documentos a ser inscritos. Del historial legisla-tivo de esta pieza legislativa se desprende la preocupación de la Legislatura, ya que debido a “la situación económica general, la probabilidad de que se asignen más fondos al Registro de modo que puedan añadirse funcionarios que tramiten los documentos pendientes es mínima”. (Enfasis nuestro.)(29)
La Orden Administrativa del Departamento de Justicia emitida en cumplimiento de la Ley 216 dispone que se asignará por sección un mínimo de dos “empleados” del Registro para llevar a cabo el proceso de identificación de documentos prescrito en su Artículo 3. Debemos notar que el personal que llevará a cabo estas funciones se denomina simplemente como “empleados” y tendrá las tareas si-guientes: verificar que el número de asiento y diario co-rresponda con el del documento en la minuta de presenta-ción, poner sellos de inscripción y cancelación, cotejar el proceso con la bitácora y llenar diversos formularios. Esto significa que el grueso del trabajo, o sea, la identificación y separación de documentos y comprobantes de 4,000 docu-mentos al mes, será realizado no por el personal pericial o técnico, sino por personal general que deberá ser reasig-nado, no importa sus puestos regulares, para cumplir con el proceso de inscribir los documentos atrasados.(30) De esta forma podemos colegir que el uso del término “personal” en la Ley 37 es compatible con posteriores actos legis-lativos que buscan salvaguardar en su totalidad el pro-grama del Registro de la Propiedad, mediante un proceso de reubicación laboral del personal que llevará a cabo la fase inicial del proceso de inscripción expedita.
Recalcamos, además, que existe una clara distinción en-tre el lenguaje que se usa para identificar este personal y *828 el utilizado por la Ley 7 para otras categorías de personal. Así, observamos que mientras el Artículo 37.02(i) se refiere al “personal pericial” del Instituto de Ciencias Forenses, el Artículo 37.02(n) se refiere al “personal de apoyo técnico” de Rehabilitación Vocacional.(31) Es evidente que los em-pleados, o el personal, que han de ser excluidos del plan de cesantía de estas dos agencias se distinguen del término raso “personal”, utilizado sin calificación para describir los empleos del Registro de la Propiedad.
Este razonamiento hace eco nuevamente en las expre-siones recogidas en el historial legislativo, las cuales reve-lan que esta distinción no fue producto del azar o de un lapso de desapercibimiento:
Sr. Ontrón Rodríguez: “[Enmiendas para excluir de los despi-dos y cesantías voluntarias] ... Maestros de la escuela de Artes Plásticas, personal pericial y técnico de Ciencias Forenses ... empleados de la Comisión de Relaciones al Trabajo del Servi-cio Público, Registro de la Propiedad, vamos a incluir a los consejeros, también, de Rehabilitación Vocacional, y personal técnico y pericial de dicha oficina ...”. (Enfasis nuestro.)(32)
En esta instancia el representante cameral es contun-dente al equiparar el término “personal”, en cuanto al Ar-tículo 37.02(Z), con el de “empleado”. Es decir, no solamente se intima que el programa del Registro de la Propiedad había de ser excluido de la Fase II en su totalidad, sino que el vocablo “personal” en solitario se utiliza conforme a su significado corriente y técnico que comprende a toda la plantilla laboral de la institución.
Procedemos ahora a examinar las razones por las cuales se enmendó la Ley 7. El P. de la C. 1640 esclarece en su Exposición de Motivos que en aras de proteger los intere- *829 ses del pueblo de Puerto Rico “[e]s responsabilidad de esta Asamblea Legislativa velar porque [sic] las medidas que componen las Fases I, II y III del referido Capítulo se im-planten de una manera eficiente y responsable, cónsonas plenamente con los objetivos de política pública de esta Ley, según dispuestos en su Artículo 2”.(33) Los fines de la Ley 7 se plasman nítidamente en dicho artículo, el cual declara expresamente ciertas metas gubernamentales, tales como: crear un plan integrado para “el restablecimiento la salud fiscal y las bases para que el Gobierno pueda im-pulsar el desarrollo económico”, entre otros asuntos.(34)
Podemos deducir del historial legislativo que la inclusión del “personal” del Registro de la Propiedad en el Artículo 37.02(Z) cumple con los dos propósitos principales de las enmiendas presentadas por las Comisiones de Hacienda y Gobierno en su Informe Positivo, es decir: “promover el desarrollo económico y proteger ciertos empleos en el sector público de alta importancia para el servicio de la ciudadanía.” (Enfasis nuestro.)(35) Esto es así debido a la importancia de los servicios del Registro de la Propiedad para el bienestar general de la ciudadanía. Es decir, allí se hacen constar las transacciones que afectan la titularidad de los derechos reales y otros derechos inscribibles que se imponen sobre los bienes inmuebles. De esta forma, al es-tar los documentos inscritos adquieren publicidad y dan eficacia a las garantías reales que confieren protección a adquirentes y acreedores, junto a la defensa y legitimación de las titularidades inscritas.(36) En fin, el Registro de la *830 Propiedad asegura el tráfico de los diversos negocios y ac-tos jurídicos, lo cual constituye el cúmulo de la seguridad jurídica, eslabón indispensable en la protección de la eco-nomía pública y en los esfuerzos para paliar los embates de una crisis financiera. (37)
Para complementar nuestro análisis sobre la naturaleza socioeconómica del Registro de la Propiedad, nos remiti-mos a las palabras del doctor Vázquez Bote, quien señala la importancia que tiene esta institución en el desenvolvi-miento de nuestro país. Este expresa que “un buen Regis-tro de la propiedad, cuyo contenido es la expresión más fiel y posible de la realidad inmobiliaria, [es un] instrumento magnífico, y muy económico, ante la perspectiva del desa-rrollo de un país”.(38) Además, nos reitera que este “[facilita] las transacciones y la colaboración social [y] ayuda a ambas partes que en aquél expresan su relación. Así estructurado, el Registro de la propiedad no sólo ayuda al desarrollo, sino que él mismo es [el] desarrollo”. (Enfasis nuestro.)(39) A una conclusión similar se puede llegar al es-tudiar la función de nuestro Registro de la Propiedad en la protección de la seguridad jurídica, no tan solo a nivel local, sino dentro de un marco globalizado e internacional. De este enfoque se concluye, forzosamente, que “[s]¿ bien la seguridad jurídica integra el plexo de valores jurídicos esenciales de toda convivencia civilizada, y —por su impor-tancia y contenido— excede el marco que propone un aná-lisis estrictamente económico, corresponde asegurar que se *831 trata de un valor operativo o condicionante del crecimiento económico”. (Enfasis nuestro.)(40)
Según lo antes dispuesto, el eximir del plan de cesantía al personal del Registro de la Propiedad no solamente asegura el buen funcionamiento de un servicio esencial e indispensable para la ciudadanía, sino que propicia el desarrollo económico de Puerto Rico. Como ya vimos, la Exposición de Motivos de la Ley 7 informa que su fin es alcanzar un estado de crecimiento económico estable para salvar el crédito de Puerto Rico, mientras que las enmiendas de la Ley 37 tenían como fin asegurar el buen funcionamiento del Gobierno y, en particular, mantener a flote nuestra economía. Es evidente, entonces, que aumentar el número de personas que serán excluidas del plan de cesantía en el caso del Registro de la Propiedad redunda en el bienestar general de nuestro país, mientras que restarle empleados, aunque sean los no técnicos, resultaría en mermar la productividad de dicha institución que tanto dinero genera para el Gobierno mediante el cobro de aranceles.(41)
El argumento del E.L.A., en cuanto a que el Artículo 34 refleja de forma fehaciente que no era la intención del le-gislador excluir de los efectos de la Ley 7 al Registro de la Propiedad en su totalidad, no nos convence. Aunque es cierto que el Artículo 34 debe ser interpretado conjunta-mente con el Artículo 37.02, el análisis del E.L.A. en nada atiende el historial legislativo del estatuto en cuestión e ignora por completo la naturaleza de la Ley 7 y la función socioeconómica del Registro de la Propiedad.
La importancia de esta institución es, en efecto, reconocida en el Artículo 37.02(Z), que distingue al Registro claramente del Departamento de Justicia al que no se eximió del plan de cesantía. Al unir esto a las distinciones entre los incisos de este articulado, en razón del uso del *832 término “personal” frente a “personal técnico y pericial”, se comprueba la naturaleza indispensable de dichos empleos generales según la evaluación legislativa. En cuanto al tér-mino “personal del Registro de la Propiedad”, al este no delimitarse y, por ende, no reducirse su amplitud mediante la inclusión de un adjetivo o vocablo adicional que trace sus contornos, a saber, “personal técnico”, “personal peri-cial”, “personal administrativo”, “personal directivo”, etc., se revela la verdadera intención del legislador. Por otra parte, no es necesario recurrir a la J.R.E.F., como arguye el E.L.A., para determinar cuáles son los empleos esenciales dentro del término “personal” bajo el Artículo 37.02(1). En nuestro más reciente precedente determinamos clara-mente que la J.R.E.F. no tiene la potestad de limitar las exenciones dispuestas en la Ley 7, según enmendada. O sea, la J.R.E.F. solo puede ampliar la lista de los emplea-dos ya exentos y no está facultada para aplicar el plan de cesantía a los empleados cuyos puestos fueron incluidos expresamente en los renglones del Artículo 37.02.(42)
Como ya hemos señalado, el uso continuo y distintivo del vocablo “personal” en las enmiendas a la Ley 7 no puede ser ignorado. Nada en el texto de la ley ni en el historial legislativo indica que la enmienda al Artículo 37.02 fue realizada a modo ejemplar o que haya sido pro-ducto de un error legislativo.(43) Por el contrario, el término *833 “personal” es utilizado no tan solo una vez, sino en tres ocasiones distintas y de forma consecutiva. En estas tres instancias la relación entre las agencias afectadas y sus funciones esenciales, sumamente delicadas en tomo a la seguridad y el bienestar económico de Puerto Rico, son evidentes. Tampoco se puede imputar que la Asamblea Le-gislativa hace cosas inútiles, máxime cuando se trata de la realización de un acto legislativo como la aprobación de una enmienda(44)
Siguiendo estas consideraciones, concluimos que el le-gislador escogió cuidadosamente el vocablo que respondía a su verdadera intención. Contrario a lo que propone el E.L.A., si la Asamblea Legislativa hubiese querido refe-rirse a los empleos en el caso del Registro de la Propiedad a ser exentos como solo aquellos que fueran técnicos, hu-biese utilizado los términos “personal técnico” o “personal pericial” como lo hizo en los incisos (i) y (n) del Artículo 37.02 o hubiese añadido ejemplos concretos como en el caso del inciso (f).(45) En el caso ante nuestra consideración, no seguir al pie de la letra el significado corriente de “personal” equivaldría a menoscabar los esfuerzos realizados por la Asamblea Legislativa de rectificar ciertas deficiencias de la ley especial y robustecer la economía de Puerto Rico, excluyendo del plan de cesantía a la fuerza laboral del Re-gistro de la Propiedad. Queda claro que la naturaleza y función del Registro de la Propiedad, junto al historial le-gislativo y el mismo texto de la Ley 7, según enmendada, denotan que esta interpretación cumple con el propósito económico de la ley especial.
En este caso, contrario a lo que ocurrió en Negrón Matos y Báez Rodríguez, no hace falta revisar las clasificaciones de los empleados cesanteados que recurren ante este foro *834 para determinar si éstos se ubican en una categoría ex-cluida del plan de cesantía. Basta con que la parte deman-dante, como en el presente caso, sea empleado del personal del Registro de la Propiedad y haya sido cesanteado de acuerdo con la Ley 7.
En resumen, concluimos que la enmienda al Artículo 37.02 de la Ley 7 tuvo como finalidad expresa resguardar de los efectos del plan de cesantía a todos los empleados del Registro de la Propiedad de Puerto Rico. La letra de la Ley 7, según enmendada, y el historial legislativo avalan esta interpretación y justifican dicha medida en aras de corregir ciertas deficiencias del texto original de la ley especial.
Por todo lo antes expuesto, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que se continúen los procedi-mientos. (46)

Se dictará sentencia de conformidad.

 La resolución de la CASARH nada resuelve en cuanto a la exclusión estable-cida por el Artículo 37.02 de la Ley 7 de 9 de marzo de 2009. En efecto, la misma sólo versa sobre la recertificación de la antigüedad de la señora Sánchez Díaz, computada en 7 años, 7 meses y 29 días.

 La petición de certiorari de la señora Sánchez Díaz fue expedida el 21 de mayo de 20Í0, mientras que el recurso de apelación civil de la señora Anca Santiago, acogido como certiorari, lo fue el 4 de junio de 2010.

 “Cualquier parte que haya sometido una petición o moción fundamentada con relación a la expedición de un auto podrá someter el asunto sin necesidad de presentar un alegato. Deberá hacerlo constar así en una moción informativa, y la fecha de presentación y notificación de dicha moción será equivalente para todos los fines pertinentes a la fecha de presentación y notificación del alegato. No obstante lo anterior, el Tribunal podrá ordenar que se prepare y someta un alegato en cualquier caso que lo considere necesario.” 4 L.P.R.A. Ap. XXI-A, R. 33(k).

O La moción informativa es clara en cuanto a que dicha transacción surtía el efecto de desistir de la causa de acción “única y exclusivamente para la demandante aquí compareciente, Madeline Sánchez Díaz”. Moción Informativa sobre Desisti-miento por Acuerdo Transaccional, 28 de febrero de 2011. Por otro lado, debemos resaltar que posteriormente recibimos una moción informativa adicional informando un acuerdo transaccional similar celebrado entre Lourdes Laclaustra De Jesús y el Estado Libre Asociado de Puerto Rico. Moción Informativa sobre Desistimiento por *818 Acuerdo Transaccional, 19 de abril de 2011. Sin embargo, no surge del expediente que dicha persona sea parte del caso de epígrafe, por lo cual la tomamos por no puesta.

 “Este Capítulo III será de aplicación a todas las Agencias cuyo presupuesto se sufraga, en todo o en parte, con cargo al Fondo General a la fecha de vigencia de esta Ley. Estarán exentas de la aplicación de esta Ley las ramas judicial y legisla-tiva, así como las agencias de gobierno e instrumentalidades gubernamentales ex-cluidas por el Artículo 5, Sección 5.3 de la Ley Núm. 184 de 3 de agosto de 2004, según enmendada; conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico; disponién-dose, no obstante, que estará sujeta a la aplicación de esta Ley la Oficina propia del Gobernador.” Artículo 34 de la Ley Núm. 7.

 Los empleados del Registro de la Propiedad no aparecían especficamente mencionados en esa lista inicial.

 Informe Positivo sobre el P. de la C. 1640 de 19 de junio de 2010, pág. 16.

 “Sección 40. Se enmienda el Artículo 37.02 de la Ley Núm. 7 de 9 de marzo de 2009, para que se lea como sigue:
“Artículo 37.02. — Exclusión de la aplicación de la Fase II.
A fin de evitar un impacto negativo en los servicios brindados por el Gobierno y en cumplimiento con lo dispuesto en el Artículo 2 de esta Ley, estarán exentos de las cesantías de la presente ley los empleados de las Agencias que según sus clasificacio-nes llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar, según serán definidos por la JREF, tales como:
(a) policías y bomberos, agentes del Cuerpo de Vigilantes, agentes del Negociado de Investigaciones Especiales y la Oficina del Fiscal Especial Independiente;
(b) oficiales de corrección y oficiales juveniles;
(c) maestros asignados al salón de clases, incluyendo los transitorios durante el año escolar;
(d) Directores, bibliotecarios, orientadores y empleados de comedores adscritos al Departamento de Educación;
(e) maestros del Conservatorio de Música de Puerto Rico y de la Escuela de Artes Pálsticas;
(f) profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio);
(g) trabajadores sociales,
(h) operadores del sistema de llamadas de emergencia 911;
(i) patólogos, personal pericial y técnico del Instituto de Ciencias Forenses;
(j) empleados de la Comisión de Relaciones del Trabajo del Servicio Público y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servi-cio Público;
(k) Personal de la Oficina de Servicios con Antelación a Juicio;

(l) Personal del Registro de la Propiedad',

(m) Personal de la Junta de Libertad Bajo Palabra; y
(n) Consejeros en Rehabilitación Vocacional y personal de apoyo técnico ....” (Enfasis nuestro.)

 Báez Rodríguez et al. v. E.L.A., 179 D.P.R. 231, 249 (2010).

 íd., póg. 250.

 íd-

 En cuanto al señalamiento del E.L.A. sobre la aplicabilidad de la doctrina de cosa juzgada para con la señora Sánchez Díaz, al haber esta desistido del presente caso, y por ser la única peticionaria que compareció ante la CASARH para impugnar su cesantía conforme al Artículo 37.02 de la Ley 7, supra, el mismo no debemos atenderlo.

 31 L.P.R.A. sec. 14.

 31 L.P.R.A. sec. 15. Véanse, además: Bird v. Eastern Airlines, Inc., 99 D.P.R. 955 (1971); Cooperativa Cafetaleros v. La Capital, 82 D.P.R. 51 (1961); Bull Insular Line v. Sancho Bonet, Tes., 53 D.P.R. 865 (1938).

 Depto. Estado v. U.G.T., 173 D.P.R. 93, 110 (2008); Guzmán v. Calderón, 164 D.P.R. 220, 256-257 (2005); Mun. San Juan v. Banco Gub. Fomento, 140 D.P.R. 873, 884 (1996); Clínica Julia v. Sec. de Hacienda, 76 D.P.R. 509, 521 (1954).

 A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 820 (1986); Delgado v. D.S.C.A., 114 D.P.R. 177, 182 (1983); Cirino v. Fuentes Fluviales, 91 D.P.R. 608, 616 (1964).

 íd.

 A saber, en Negrón Matos et al. o. E.L.A., 179 D.P.R. 217 (2010), el caso trataba sobre el Artículo 37.02(b) que incluye “oficiales de corrección y oficiales juveniles”, mientras que en Báez Rodríguez el Artículo 37.02(i) incluye los puestos de “[p]atólogos, personal pericial y técnicos del Instituto de Ciencias Forenses”. Debe-mos resaltar que aunque el Artículo 37.02(b) se mantuvo inalterado por la enmien-das de la Ley 37, el texto original del la Ley 7, que concernía al Instituto de-Ciencias Forenses, incluía en su Artículo 37.02(h) solamente a los “patólogos del Instituto de Ciencias Forenses”. En este último caso la enmienda resultó, más allá de cambiar la enumeración del referido inciso, en añadir otros empleos o puestos generales a la lista de los excluidos del plan de cesantía.

 Es decir, originalmente serían excluidos del plan de cesantía empleos o puestos particulares, tales como: policías, bomberos, oficiales de corrección y juveniles, maestros, bibliotecarios, médicos, paramédicos, enfermeras, farmacéuticos, téc-nicos de laboratorio, trabajadores sociales, operadores del sistema de llamadas de emergencia y patólogos.

 Moción de desestimación y/o en oposición a que se expida el recurso de autos, 12 de enero de 2010, págs. 12-14.

 Pérez v. Mun. de Lares, 155 D.P.R. 697, 706 (2001). Véanse, además: Departamento Hacienda v. Telefónica, 164 D.P.R. 195, 204 (2005); Pueblo v. Zayas Rodríguez, 147 D.P.R. 530, 538-539 (1999).

 Pueblo v. Negrón Caldero, 157 D.P.R. 413, 423 (2002); Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 275 (2000); Pueblo v. Tribunal Superior, 104 D.P.R. 363, 366 (1975).

 Pueblo v. Cosme Vargas, 96 D.P.R. 836, 842 (1969); Bacardi Corporation v. Tribl. Contribuciones, 75 D.P.R. 131, 137 (1953).

 M. Moliner, Diccionario de Uso del Español, Madrid, Ed. Gredos, 1991, pág. 717.
Véanse, además, las definiciones siguientes: “Conjunto de empleados de una empresa. Plantilla.” M. Vaquero y A. Morales, Tesoro Lexicográfico del español de Puerto Rico, Academia Puertorriqueña de la Lengua Española, San Juan, Ed. Plaza Mayor, 2005, pág. 602; “A body of persons usually employed (as in a factory, office or organization)”, Merridan Webster’s Collegiate Dictionary, Merriam-Webster, lOma ed., Springfield, 1993, pág. 867.

 I. Rivera Garcia, Diccionario de Términos Jurídicos, 2da ed., Orford, Ed. Equity, 1985, pág. 204.

 A.S. Suárez Suárez, Diccionario de Economía y Administración, Ed. McGraw-Hill, Madrid, 1992, pág. 215. También, véase Diccionario de Economía y Negocios, Madrid, Ed. Espasa Calpe, 1999, pág. 481 (“[elquipo de personas que for-man parte de la plantilla de una empresa y en la que prestan servicios”).

 P.H. Casselman, Labor Dictionary, Nueva York, Philosophical Library, 1949, pág. 357.

 P. de la C. 1640, Diario de Sesiones de 19 de junio de 2009, pág. 8.

 Informe Positivo de la Comisión de lo Jurídico y Ética sobre el P. de la C. 2683, de 22 de junio de 2010, pág. 7.

 Véase Parte III(B) (1 y 4), OA Núm. 2011-01 de 24 de enero de 2011, Medidas en Torno a la Implementación de la Ley Núm. 216 de 27 de diciembre de 2010 y el Artículo 13 del Reglamento Núm. 7988 de 4 de febrero de 2011.

 Notamos que, al igual que el término “personal” del Registro de la Propiedad, los términos “personal pericial y técnico” y “personal de apoyo técnico” del Ins-tituto de Ciencias Forenses y del programa de Rehabilitación Vocacional, correspon-dientemente, fueron incluidos en el texto del Artículo 37.02 de acuerdo con las enmiendas de la Ley 37.

 P. de la C. 1640, supra, pág. 21.

 Informe Positivo Conjunto P. de la C. 1640, de 25 de junio de 2009, pág. 5.

 Artículo 2 de la Ley 7, supra.

 P. de la C. 1640, supra, pág. 16.

 Véase el Artículo 7 de la Ley Hipotecaria, 30 L.P.R.A. see. 2051.
Además, “[e]l registro efectúa una calificación de legalidad registral del negocio, dando por bueno y por auténtico, tanto el contenido de las afirmaciones de los otor-gantes como las certificaciones técnicas del propio notario derivadas de su estudio de los antecedentes que legitiman la operación, llámese título de propiedad, anteceden-tes dominiales, representaciones invocadas, situación impositiva, identidad y capa- *830 cidad jurídica actual de los otorgantes para un otorgamiento plenamente valedero, y todo lo necesario para un ‘buen resultado jurídico’ del negocio de fondo documentado”. H. Pérez Montero, Necesidad social de la función notarial, 44 (Núm. 3) Rev. Der. Pur. 253, 275 (2005).

 “[S]ólo recientemente se ha comenzado a considerar la ausencia de seguri-dad jurídica como uno de los factores limitantes del crecimiento económico.” E.I. Highton y A.G.E. Vitale, La función notarial en la comunidad globalizada, Buenos Aires, Ed. Rubinzal-Culzoni, 2005, pág. 61.

 g Vázquez Bote, Sentido de la reforma hipotecaria en Puerto Rico, Tesis Doctoral en Derecho, San Juan, 1972, pág. 107.

 íd., pág. 110.

 Highton y Vitale, op. cit., pág. 61.

 P. de la C. 1640, supra, pág. 8.

 “[L]a facultad de la J.R.E.F. bajo el Artículo 37.02, supra, se limita a deter-minar cuáles otros empleados no incluidos en la lista deben ser excluidos de la apli-cación de la ley. ... Una interpretación contraria significaría que la enmienda limitó aún más las exclusiones dispuestas por ley al disponer que la J.R.E.F. es quien de-termina cuáles empleados dentro de esos renglones están exentos de la aplicación de la Ley Núm. 7.” (Enfasis nuestro.) Báez Rodríguez et al. v. E.L.A., supra, pág. 250.

 En Passalacqua v. Mun. de San Juan, 116 D.P.R. 618 (1985), rechazamos una interpretación “literalista” de la ley en vista de que la Asamblea Legislativa había cometido un error palpable en la promulgación de la ley. En aquella instancia, este Tribunal dictaminó que si dicho error resulta ser contrario al resto de la ley o menoscaba su efectividad, este puede ser eliminado, como también puede añadirse una frase o palabras para que se pueda cumplir con la intención legislativa. Véase Rivera Cabrera v. Registrador, 113 D.P.R. 661, 664-665 (1982) (el cual se centra en un simple “error de trámite” o de “elemental factura oficinesca" que resultó en una discordancia de una sola línea entre nueve incidencias de enmienda para duplicar los derechos de arancel).

 Talcott Inter-Amer. Corp. v. Registrador, 104 D.P.R. 254, 262 (1975); Flam-boyán Gardens v. Junta de Planificación, 103 D.P.R. 884, 888 (1975).

 “[profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuti-cos y técnicos de laboratorio).” Artículo 37.02(f) de la Ley Núm. 7.

 En cuanto al caso AC-2010-0002, el E.L.A. adujo que el reclamo de la señora Anca Santiago era académico y debía ser desestimado. Adjunto a su solicitud, la parte demandada nos produjo una Resolución en Reconsideración de la CASARH, de 30 de junio de 2010, donde se resolvió que, debido al dictamen de este Tribunal en Báez Rodríguez, la parte demandante sería reinstalada a su puesto en el Registro de la Propiedad. Se ha reconocido que un caso no es justiciable cuando se ha tornado académico, o sea, cuando este deja de presentar una controversia real que amerite la intervención de los tribunales de justicia. Véanse: Moreno v. Pres. U.P.R. II, 178 D.P.R. 969 (2010); Lozada Tirado v. Testigos de Jehová, 177 D.P.R. 893 (2010); Romero v. E.L.A., 169 D.P.R. 460 (2006); Hernández Torres v. Hernández Colón et al., 131 D.P.R. 593 (1992); E.L.A. v. Aguayo, 80 D.P.R. 552 (1958). Es norma trillada que un caso se torna académico cuando su condición de controversia viva y presente cesa por el transcurso del tiempo. Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924 (2000); P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995). Esto significa que la controversia real debe existir “en todas las etapas del proceso judicial, tanto en la inicial como en la apelativa”. Presidente de la Cámara v. Gobernador, Í67 D.P.R. 149, 157 (2006).
Notamos que la señora Anca Santiago no cumplió con la Resolución de este Tribunal en la cual se le requirió que nos notificara su nueva representación legal dentro del término de 30 días. Tampoco compareció desde que expresó su negativa de aceptar la oferta de transacción del E.L.A. y no nos ha puesto en posición para determinar si, en efecto, fue reinstalada a su puesto. Por lo tanto, contando con la Resolución en Reconsideración de la CASARH, y como resultado de la ausencia de interés mostrado por la parte demandante, no nos queda más remedio que declarar su reclamo académico y desestimar su recurso de apelación civil.